Plaintiff filed this suit against the Cloverland Dairy Products Company, Inc., its public liability insurance carrier, New Amsterdam Casualty Company, and Jimmie Newman, asking for damages against these defendants in the total sum of $15,589, on account of personal injuries received by him, medical expenses and loss of his mule and wagon, resulting from an accident on February 6, 1943, when a milk truck driven by said Newman ran into the rear of plaintiff's wagon on U.S. Highway 51 a mile or two north of Hammond.
In his original petition and the supplemental petition later filed by him to meet an exception filed, the plaintiff alleged, in substance, that, in company with his two daughters, he was traveling south on said highway about 7:30 o'clock in the morning, driving his mule and wagon on the right side of the road, when a milk truck driven by said Newman, approaching from the rear at a fast rate of speed, attempted to pass his wagon in the face of a vehicle approaching from the opposite direction, and seeing that he could not pass plaintiff's wagon, said Newman threw on his brakes, and because of the defective brakes or the speed he was traveling, said Newman *Page 168 
could not stop his truck and crashed into plaintiff's wagon, killing the mule, demolishing the wagon and seriously injuring plaintiff. The negligence charged to Newman is that he was not keeping a proper lookout, attempting to pass plaintiffs wagon in the face of an oncoming vehicle, and in driving at an excessive speed and running into plaintiff's wagon without stopping the truck. In his supplemental petition, plaintiff alleged that said Newman was an employee of the Cloverland Dairy Products Company, Inc., and was operating its truck loaded with milk being taken to the Company's plant in New Orleans, and that Newman was on a regular run for said company and in the course of his employer's trade and undertaking.
Just before this case was put at issue, the two major daughters of plaintiff filed separate suits against the three defendants for damages on account of personal injuries received by them in the accident while they were riding in the wagon with their father as guests. One of these suits is entitled Cali v. Cloverland Dairy Products Company, Inc., et al., La. App., 21 So.2d 171, in which case the plaintiff claims damages in the sum of $16,010, and the other case is entitled Cali v. Cloverland Dairy Products Company, Inc., et al., La. App.,21 So.2d 171, in which case the plaintiff claims damages in the sum of $15,125. The allegations of the plaintiffs in these two suits are practically the same as those made by Vito Cali with respect to the negligence of Newman and the liability of the defendants. What is said here relative to the liability, vel non, of the defendants will apply to all three cases.
The defendants filed a joint answer in which they admit that the New Amsterdam Casualty Company is the liability insurer of the Dairy Products Company, but they deny that Newman was guilty of any negligence and deny that said Newman was driving a truck owned by the. Dairy Products Company and deny that he was an agent or employee of said Company at the time of the accident. They aver that the accident occurred about 7 o'clock in the morning, more than a half hour before sun rise, and that the cause of the collision was the failure of Vito Cali to have a tail light on the rear of his wagon as required by law. The alleged negligence of Vito Cali is pleaded in the alternative as a bar to his recovery in his suit, and is also pleaded against the plaintiffs in the other two suits in that they were riding in the wagon with their father with full knowledge of the fact that he did not have the required lights on his wagon.
A judgment was rendered in the trial court in favor of Vito Cali against the defendants in the sum of $4,089, in favor of Mary Ann. Cali in her suit for the sum of $2,445, and in favor of Frances Cali in her suit in the sum of $1,025. Defendants appealed in all three cases, and plaintiffs filed answers to the appeals, asking that the judgments be amended by increasing the awards to the amounts claimed, and awarding damages for a frivolous appeal.
[1] A decided preponderance of the evidence shows that the accident occurred about 7:30 o'clock on the morning of February 6, 1943; that the weather was clear, and it was good daylight; that the road at the point of the accident is straight. There was no need for Cali to have a light on his wagon at the time the accident occurred.
[2] We have no difficulty in reaching the conclusion that the accident was caused solely by the negligence of Newman, the driver of the truck. According to his own testimony, he was driving around 40 miles per hour, and did not see the wagon until he was within 15 to 20 feet of it; that he did not have time to apply his brakes as he approached the wagon from the rear (both vehicles were going south); that another car was coming from the opposite direction, but he was not trying to pass the wagon. He admits that the wagon was struck a hard blow by the truck, and one of the girls in the wagon was thrown against the windshield of the truck. He says that the accident happened about 7:15 o'clock in the morning and that it was still dark, but he is contradicted on this point by practically all the other witnesses who testified that the accident happened not earlier than 7:30 and that it was good daylight.
There is evidence in the record to show that the left wheels of the truck were to the left of the center of the pavement just before the truck reached the wagon, and the truck was pulled back on its side of the road just before it struck the wagon in the rear, throwing it in the ditch, killing the mule hitched to the wagon, and throwing the occupants in different directions. The wagon was well over on its side of the road when it was run into from *Page 169 
the rear by the truck and completely demolished. There can be no question of the liability of Newman.
[3-6] The most serious question in the case is whether or not there is sufficient evidence in the record to hold the Dairy Products Company and the Casualty Company liable for the acts of Newman. As already stated, the defendants in their answer denied that the truck which Newman was driving at the time of the accident was owned by the Dairy Products Company and denied that Newman was in the employ of that Company.
Newman testified that he was employed by the Magnolia Creamery, Inc., a separate corporation, and in connection with his testimony two check stubs were offered in evidence, one showing that for the week ending February 4, 1943, he was paid by the Magnolia Creamery Co., Inc. He was hauling milk on the day of the accident from the cooling plant at Tangipahoa owned by the Cloverland Dairy, and the milk was owned by that Company and was being transported to its plant in New Orleans. Newman testified that the truck he was driving was owned by the Magnolia Creamery, and that there was written on the side of the truck in big, block letters, "Magnolia Creamery, Inc."
There was no direct testimony to refute that of Newman at the time the case was tried, to the effect that he was not an employee of the Cloverland Dairy and the truck was not owned by that Company, other than some circumstances which indicated that the Company had some interest in Newman's employment and the ownership of the truck. However, several months after the case was tried but before it was decided, counsel for plaintiff filed a motion and rule against the defendants to have the cases reopened and order the production of the public liability policy on the truck. The defendants objected to this motion and rule for the reason that the pleadings had put at issue the ownership of the truck and the cases had been tried and submitted. The objection was overruled and defendants were ordered to comply with the rule within a fixed date. The order was complied with, and a policy was filed in the record showing that the New Amsterdam Casualty Company carried public liability and property damage insurance on a large number of trucks owned by the Cloverland Dairy Products Company, including one truck described on the list as W A 20 White 10 ton truck, Motor No. 5089 located at New Orleans.
On the policy issued by the Casualty Company covering a fleet of trucks owned by the Dairy Products Company, there is a rider attached to the policy stating that "White 10 ton truck No. 5089 covered under this policy is designated as unit No. 100 instead of as originally shown." And in consideration of an additional premium the garage location of the truck is changed to Brookhaven, Miss., instead of New Orleans, and by another rider dated the same date, the policy was extended to cover the interest of the Brookhaven Creamery Company as respects the said White truck, but the last named endorsement was substituted by another rider of a later date (before the accident, however) whereby the policy was extended to cover the interest of the Magnolia Creamery Company as respects unit No. 100 White 10 ton truck M No. 5089 covered under the policy. There is a provision in this endorsement to the effect that the terms and conditions of the Fleet Plan Endorsement attached to the policy shall apply exclusively to Cloverland Dairy Products Company, Inc., and that the policy shall exclude all automobiles and trailers belonging to any individual, firm or corporation other than said Company.
The only evidence we have been able to find in the record as to what truck Newman was driving at the time of the accident is that of Newman himself who stated that he was driving a tandem tank White truck loaded with milk, and that the truck was owned by the Magnolia Creamery Company. A state trooper testified that the truck was a large white truck with a tank, and had a Mississippi license on it.
In our opinion, the trial judge acted within his discretion in ordering the defendants to produce the policy after the case was tried but before judgment was rendered. He had a right, if in his opinion the ends of justice required, to reopen the cases to permit the production of further evidence by either side. No further evidence was offered by the plaintiffs after the production of the policy to show that the truck which Newman was driving at the time of the accident was the one described in the endorsement as unit No. 100 White 10 ton truck motor No. 5089. Obviously, the Casualty Company would be liable for the acts of Newman if *Page 170 
he was driving this truck at the time of the accident, whether he was employed directly by the Magnolia Creamery Company or indirectly by the Cloverland Dairy Products Company, but we have no right to assume that the truck which he was driving was the one covered by the policy, as a judgment cannot be based on the assumption of an important and a material fact.
[7-9] Nor is there sufficient evidence in the record for us to hold that the Dairy Products Company is responsible for the acts of Newman as its agent or servant. To hold this Company for his acts under the rule of respondeat superior the evidence must show that he and the Company sustained to each other the relationship of master and servant, or that their relationship was such that the Dairy Products Company had control over his operations and that he was acting in furtherance of the Company's business. The mere fact, if it was a fact, that the Magnolia Creamery Company owned the truck which Newman was driving and ordinarily was the employer of Newman would not necessarily relieve the Dairy Products Company if at the time of the accident Newman was under the control and in the service of the latter company. Hutto et al. v. Arbour et al., La. App.,4 So.2d 84. An employee may have two employers at the same time under certain circumstances. See 5 Blashfield, Cyclopedia of Automobile Law and Practice, § 2941, pp. 71, 72. Whether or not Newman was in the exclusive employ of the Magnolia Creamery Company, or in the employ and service of both companies so as to make either liable for his acts, is not sufficiently shown by the evidence in the record.
Under these circumstances, we are of the opinion that the ends of justice will be met by remanding the case as to the Cloverland Dairy Products Company and the New Amsterdam Casualty Company for further proof on the matters and things hereinabove mentioned. As to the other defendant, Newman, we have only to consider the question of amending the judgment as to the amount of the award against him.
[10] Vito Cali is a man about 64 years old. The doctor who first saw him after he was taken to the hospital testified that he was suffering from mild shock and deep lacerations; one extending from the corner of his right eye severing the lid and extending back over the forehead five or six inches, and a laceration near the midline at the forehead and extending about six inches over the top of his head; in other words, he was partly scalped over the forehead and front part of his head. The lower lip was split and severed from the right side down to the midline of his chin, and there were other deep lacerations, bruises and contusions over his face and body, with fracture of the ninth rib. He remained in the hospital for about three weeks, and the doctor stated that when he was discharged from the hospital there were two or three places which had not completely healed. The doctor saw him again almost a year later and says that plaintiff had then fully recovered as far as his injuries were concerned, but he had a few scars left, particularly on his lip and over his forehead, however, the doctor did not think these scars were particularly disfiguring to a man plaintiff's age.
The trial judge awarded plaintiff $3,500 for physical injuries, pain and suffering and disfigurement. We have decided to reduce this item to $3,000, to which should be added the proven value of the mule which was killed, $150, the value of the wagon, $100, and medical bill of $324, making a total of $3,574.
For the reasons assigned, it is ordered that as to the defendants, Cloverland Dairy Products Company, Inc., and the New Amsterdam Casualty Company, the judgment appealed from in this case is avoided and set aside, and as to these two defendants, the case is remanded to the district court to be proceeded with according to law and the views herein expressed; and, as to the other defendant, Jimmie Newman, the judgment is amended by reducing the award in favor of Vito Cali from the sum of $4,089 to the sum of $3,574, and as thus amended, the judgment is affirmed. *Page 171