DORE, Judge.
These three -separate suits were consolidated for trial in the District Court and were consolidated for argument and submission in this court with the provision that a separate decree be rendered in each case. Plaintiffs Stanford Benoit and Joseph Holloway filed separate suits in tort for damages against Hunt Tool Company and its insurer, Insurors’ Indemnity and Insurance Company. The other plaintiff, Anchor Casualty Company, the compensation insurer of Morris & Meredith, Inc., filed suit against the Hunt Tool Company and its insurer to recover workmen’s compensation and medical expenses which it had paid to or on account of Stanford Benoit, Joseph Holloway and Clemence Thibodeaux, employees of Morris and Meredith, Inc., and medical expenses it had paid to one Richard P. Stout, an employee of Wilson Manufacturing Company.
It is admitted that Insurors’ Indemnity and Insurance Company is the public liability insurer of Hunt Tool Company and that Anchor Casualty Company is the workmen compensation insurer of Morris & Meredith, Inc.
The facts in the case are not seriously disputed and are briefly stated as follows: On May 4, 1946, plaintiffs Benoit and Holloway were employed as “roughnecks” by Morris & Meredith, Inc., a corporation engaged in the oil well drilling business. Morris & Meredith, Inc., hired a welder, a helper, welding equipment and supplies from Hunt Tool Company, defendant herein, to do such welding work as would be necessary in connection with a drilling rig which it was erecting. The plaintiffs Benoit and Holloway were seriously injured by the explosion of a small tank containing fuel oil which occurred when Henrie Guillory, the welder hired from Hunt Tool Company lighted his acetylene torch in a very close proximity to the tank after already having attempted to electrically weld a crack in the tank. Plaintiffs Benoit and Holloway each received painful and disfiguring burns and other injuries. Each of the plaintiffs effected a court-approved compromise of their claims arising out of the Workmen’s Compensation Act against their employer, Morris & Meredith,' Inc.; the Anchor Casualty Company, the compensation insurer of Morris & Meredith, Inc., is seeking reimbursement of the compensation paid to the aforementioned plaintiffs and for compensation and medical expenses paid to Clemence Thibodeaux and Richard P. Stout.
Exceptions of no right and no cause of action were filed in each suit by the defendants. These exceptions were overruled. These exceptions are not urged in this court and are therefore considered as abandoned.
Thereafter the case was tried on the merits and the lower court, with written reasons, rendered a judgment in favor of the defendants rejecting the demands of all plaintiffs. Plaintiffs appealed.
The evidence leaves no doubt that the accident and injuries sustained by the plaintiffs were the result of the negligent conduct of Henrie Guillory in performing certain welding operations on a partially closed tank containing fuel oil.
Plaintiff employees contend that Hunt Tool Company is an independent or subcontractor of Morris & Meredith, Inc., as such was the employer of Henrie Guil-lory, and is a third party as contemplated by Section 7 of Act No. 20 of 1914, as amended, Act No. 247 of 1920, and is therefore liable in tort for the injuries sustained by them and caused by the negligence of Henrie Guillory in the course and scope of his employment. The other plaintiff makes the same contention as to- the.-status of Hunt Tool Company and further contends that it should be reimbursed for the compensation and medical expenses paid by it to the employees for and on behalf of Morris & Meredith, Inc.
Defendants contend that the plaintiffs’ employment is covered by the Employers’ Liability Act of Louisiana and that their exclusive remedy for the injuries' sustained by them is under said Act and that the defendant, Hunt Tool Company is not a third person within the meaning of Section 7 of the Employers’ Liability Act, Act No. 20 of 1914, as amended.
*514 In the alternative, defendants contend that Henrie Guillory had been loaned to Morris & Meredith, Inc., and at the time of the accident was under its exclusive direction and was pro hac vice an employee of Morris & Meredith, Inc., and if Henrie Guillory was negligent they are not liable for his negligence.
In the further alternative, defendants contend that the sole cause of the accident was the action of Morris of Morris & Meredith Inc., in ordering Henrie Guillory to weld a fuel tank which contained fuel oil.
Whether Henrie Guillory, at the time of the accident, was an employee of Hunt Tool Company or an employee of Morris & Meredith, Inc., quoad these plaintiffs he was a “third person” within Section 7 of Act No. 20 of 1914, as amended, providing that employee may claim compensation under said Act and also sue for tort against third person causing damages. See Kimbro v. Holladay et al., La.App., 154 So. 369, and the cases therein cited.
Since Henry Guillory was a “third person” within the purview of our Compensation Statute, supra, and since his negligent act was while he was in the course and scope of his employment, his .employer, at the time of the accident, is responsible therefor. The important question now remaining is to determine his employer at the time of the accident.
The evidence shows that Morris & Meredith, Inc. is a corporation engaged in the oil well drilling business and on May 4, 1946, it was engaged in repairing and overhauling a rig to be used in drilling for oil and gas on a location in Calcasieu Parish. Hunt Tool Company is in the business of furnishing welding supplies and equipment, together with welders and helpers, to the general public. Morris & Meredith, Inc. did not have such welding supplies, equipment, and welders in their employ to do such welding as might become necessary. Consequently, the drilling company would order from day to day from the tool company such welders and equipment as needed, which the said tool company would send to the drilling location. For example, on April 29, 1946, the drilling company ordered from Hunt Tool Company two welders with one helper and equipment; on April 30, 1946, it ordered two welders with one helper and equipment; on May 1, 1946, it ordered two welders with helper and equipment; on May 2, 1946, it ordered one welder with helper and equipment; on May 4, 1946, the day of the accident, it ordered one welder, with helper and equipment. One of the welders so sent by the tool company, from the beginning and up to and including the last order detailed above was Henrie Guillory, who was in charge of the crew. According to Henrie Guillory, he, with the equipment and helper, reported on each day to J. L. West, Morris & Meredith’s foreman on the job, for full instructions as to what the crew was to do.
The evidence is clearly to the effect that when Guillory arrived at the rig, he did not know how long he would work or what he would be required to do; he took all of his directions and instructions from Mr. Morris, an officer of Morris & Meredith, Inc., who was present on the location on that day, or Mr. West, the foreman or “tool pusher” in charge of the rig. He was under the complete supervision of Morris or West, and he accepted such orders and supervision from them; he was ordered around and treated in the same manner as any other employee of the said Morris & Meredith, Inc. It is further shown that 'from the moment Guillory arrived at the location of the well he was no longer under the supervision, control, or received any orders of any nature or kind whatever from Hunt Tool Co. However, he received his wages from said Hunt Tool Co. What is the legal effect of such a situation ?
As to plaintiff’s contention that Hunt Tool Company was an independent or sub-contractor, we find no merit therein. Hunt Tool Company did not contract to do a certain piece of work according to their own methods. They hired out or leased their equipment and their operators to Morris & Meredith, Inc., to do whatever welding they, Morris & Meredith, Inc., had to do. Hunt Tool Company never knew what was to be welded nor how long it *515 would take his welders to do whatever Morris & Meredith, Inc. desired to be welded. Under the evidence, it is clearly-shown that Morris & Meredith, Inc. directed and controlled the employees of Hunt Tool Company in what they did. It is therefore clear that Hunt Tool Company was not an independent or sub-contractor of Morris & Meredith, Inc.
In 35 Am.Jur., page 455, Section 18, is found a general statement of the situation resulting where the employees of one master are loaned to another for the carrying out of the work of the borrowing employer, viz.:
“One who has the status of general servant or employee may be lent or hired by his master to another for some special service so as to become, as to that service, the servant of such third person, the test being whether, in the particular service which he is engaged to perform, he continues to be under the direction and control of his master or becomes subject to that of the person to whom he has been lent or hired. Where an employee, with his consent, has thus been lent by his general employer to another person, he is deemed to have become, for all purposes of the relationship of master and servant, the employee of thé borrower. For the time being, he is subject to the borrower’s control and direction. However, the conclusion as to his status is the same regardless of the showing as to whether the person to whom he has been lent actually exercises his right of control or direction as to the details of the work, or simply sets the servant to do what is necessary, trusting to his expert skill for the result.
“To establish the fact that the servant of one has transferred his services to another pro hac vice, it must appear that he has assented, expressly or impliedly, to such transfer. No -one can transfer the services of his servant to another master without the servant’s consent. It must further appear that the servant has, in fact, entered upon the service and submitted himself to the direction and control of the new master.” (Italics ours).
In.regard, to the tort liability of the borrowing master and the non-liability of the lender employer, in 35 Am.Jur. page 970, Section 541, we find: “The fact that a person is the general servant of one employer does not, as matter of law, prevent him from becoming the particular servant of another, who may be held liable for his acts. Indeed, as a general proposition, if one person lends his servant to another for a-particular employment, the servant, for anything done in' that employment, is dealt with as the servant of the one to whom he has been lent, although he remains the general servant of the person who lent him. * * * The mere fact that the general employer continued to pay the wages of the wrongdoer will not make him liable for the wrongful act where it appears that the person to whom he was lent controlled him . entirely in regard to the work to be done.”
The loan-servant' doctrine has been recognized by this court and the other appellate courts of this State. See Sadler v. May, La.App., 185 So. 81; Hutto v. Arbour, La.App., 4 So.2d 84; Cali v. Cloverland, La.App., 21 So.2d 166; Spanja v. Thibodeaux Boiler Works, La.App., 2 So. 2d 668; Duke v. Dixie Bldg. Material Co., La.App., 23 So.2d 822; Dixie Machine, Welding & Metal Works v. Boulet Transfer Co., La.App., 38 So.2d 546.
Applying the tests as provided in the quoted sections of American Jurisprudence, supra, and the cases cited supra to the facts in this case, we must reach the conclusion that Henrie Guillory became an employee, pro hac vice, of Morris & Meredith, Inc.; that, as such, Morris & Meredith, Inc. was liable for Guillory’s negligence, and not Hunt Tool Company. Since the plaintiffs and Guillory were the employees of Morris & Meredith, Inc., their remedy is exclusively governed by the Compensation Act.
■ Therefore, the judgments appealed from will be affirmed by separate decrees.