166 So.2d 337 (1964)
Sulia GAUDET et al.
v.
Lawrence L. LAWES et al.
No. 6255.
Court of Appeal of Louisiana, First Circuit.
July 1, 1964.
*338 Guzzetta & LeBlanc, by Thomas Guzzetta, Thibodaux, for plaintiffs-relators.
Milling, Saal, Saunders, Benson & Woodward, by C. E. Hall, New Orleans, and Clifton Dolese, Napoleonville, for appellees.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
*339 LANDRY, Judge.
This matter is before us upon application of plaintiffs, Sulia Gaudet, and others, for writs of certiorari, prohibition and mandamus, invoking the supervisory jurisdiction of this court, and praying that the Honorable Clyde V. St. Amant, Judge Twenty-third Judicial District Court. Assumption Parish, be directed to cancel and set aside certain interrogatories propounded by defendant Union Producing Company, to plaintiffs pursuant to the discovery statute, in particular, LSA-C.C.P. Title 3, Articles 1491-1515, inclusive, and further instructing said trial court to issue an order prohibiting the taking of the interrogatories propounded to plaintiffs by the aforesaid defendant.
The sole issue presented herein in one of law, namely, the proper use of the discovery procedure.
Plaintiffs, 126 in number, filed an action for declaratory judgment seeking recognition as owners in indivision of certain property situated in Assumption Parish and alternatively asserting a petitory action against the heirs of W. H. Lawes and their mineral lessee, Union Producing Company, co-defendant herein. After disposing of certain exceptions filed by defendants and the joining of issue, the court below fixed this matter for trial but prior to the trial date, more precisely, on February 19, 1964, defendant, Union Producing Company (sometimes hereinafter referred to as "Union") served interrogatories upon one of the co-plaintiffs, Sulia Gaudet. These interrogatories were timely answered. On February 20, 1964, additional interrogatories comprising ten questions were filed on behalf of defendant Union directed to all plaintiffs. Five days later plaintiffs filed a motion styled "Motion to Strike Deposition" and obtained an order from the trial court directing Union to show cause on April 28, 1964 (the same date as that fixed for trial on the merits) why the second set of interrogatories should not be "cancelled and proscribed and an order issued herein preventing the taking of such written interrogatories." On the return date the aforesaid rule was heard and dismissed by our learned brother below whereupon the present application for writs was filed and there was issued by this court in the normal manner an alternate writ of mandamus in effect setting a return date upon which briefs might be submitted by the respective litigants. The writ issued by this court alternatively grants the relief prayed for by relators in the event respondents failed to show cause by briefs, on or before the return date fixed by this court, why the relief prayed for should not be granted. In addition our writ contained a stay order holding all further proceedings in the district court in abeyance until relators' application is disposed of by this court.
Respondent-defendant Union has filed in this court a motion to recall the alternative writ of mandamus on the ground that said respondent did not have an opportunity to object to relators' application prior to the issuance of the writ contrary to Rule XII of the Uniform Rules of the Courts of Appeal. Respondent's said motion to recall poses a preliminary procedural matter which can be disposed of readily.
Said motion to dismiss the application obviously stems from a misunderstanding of the procedure under our supervisory jurisdiction as provided by 2 LSA-Const. Art. 7, § 29.
Under Rule XII, Section 2, Uniform Rules of the Courts of Appeal, 8 LSA-R.S. (1963 P.P. p. 122), it is within the sound discretion of the district court whether to grant a stay order until an application for writs is made, and to fix the time within which such application may be made. Vincent v. Grain Dealers Mutual Insurance Company, La.App., 134 So.2d 415. After the application is made, however, it is within the sound discretion of this court whether to grant writs coupled with a stay order. Rule XII does not contemplate that a respondent necessarily be heard prior to the *340 time writs are issued. On the contrary, Rule XII, Section 3, specifically provides that the case shall be assigned for submission on the return day fixed by the court when the writ has been grantednot, as respondent interprets the rule, before it is granted. If this were not the case, this court would have no means of requiring the respondent to answer the application within a specific time. The alternate writ of mandamus provides the respondent an opportunity to be heard.
Passing to the main issues presented, we deem it necessary to first set forth respondent's interrogatories in full as follows:
1. Is each of you aware of the pendency of this action and of the contents of the petition filed herein as supplemented and amended? Has each of you consulted with your attorney with respect to the matters involved in this controversy?
2. Is it a fact that the tax deed dated August 27, 1921, recorded in Conveyance Book 58, folio 207, of the records of Assumption Parish, Louisiana refers to the property therein described as having been assessed in the name of the Estate of Desire Sauce, as shown by the tableaux of assessments for the year 1920? If your answer is no, please state fully your reasons for such answer.
3. Is it a fact that the assessment roll for the Parish of Assumption for the year 1920 reflects the property described in the tax deed, referred to in Interrogatory No. 2 above, under Assessment No. 420 (Ward 7), in the name of "Sauce Desire Est"? If your answer is no, please state fully your reasons for such answer.
4. Is it a fact that the itemization of taxes shown in the tax deed, referred to in Interrogatory No. 2 (i.e., the allocation of State, Educational, Parish and School Taxes, District Levee Tax and Acreage Tax), is identical to the allocation or assessment of taxes to "Sauce Desire Est" under Assessment No. 420 (Ward 7) of the assessment roll for the Parish of Assumption for the year 1920?
If your answer is no, please state fully your reasons for such answer.
5. Is it a fact that Assessment No. 260 (Ward 7) on the assessment roll for the Parish of Assumption for the year 1920 in the name of "Lawes H. Willie" refers to an interest in property purchased by W. H. Lawes from Jos. Sauce, et al. by deed dated September 24, 1918, recorded in Conveyance Book 57, folio 137, in the records of Assumption Parish, Louisiana? If your answer is no, please state fully your reasons for such answer.
6. Is it a fact that Assessments Nos. 260 and 420 (Ward 7) of the assessment roll for the Parish of Assumption for the year 1920, take together, cover the same property as that assessed in the name of "Sauce Desire Est", appearing on page 64 of the assessment roll for the Parish of Assumption for the year 1918, and the same property assessed in the name of "Sauce Desire Estate" appearing as Assessment No. 1789 on page 67 of the assessment roll for the Parish of Assumption for the year 1919? If your answer is no, please state fully your reasons for such answer.
7. Is it a fact that the assessments for the years 1918, 1919 and 1920 referred to in the proceeding (sic) interrogatory are the tax assessments for such years on all of the property referred to in Articles 1 and 2 of the petition? If your answer is no, please state fully your reasons for such answer.
8. If your answer to the proceeding (sic) interrogatory is in the negative, in whose name or names do you claim that the property in controversy herein was assessed for the years 1918, 1919 and 1920, and where on the respective assessment rolls for such years do the assessments on this property appear?

*341 9. If your answer to Interrogatory No. 6 is in the affirmative, do you claim that there was a payment of the taxes assessed in the name of "Sauce Desire Est" (under Assessment No. 420 in Ward 7) on the assessment roll for Assumption Parish for the year 1920 prior to the tax deed referred to in Interrogatory No. 2 above? If so, by whom were such taxes paid and when? (Please attach a copy of tax receipt). If no, do you claim that there was a dual, or double, assessment as to this property for the year 1920? If you claim that there was such a dual, or double, assessment for the year 1920, in whose name was such other assessment made, and where does it appear on the assessment rolls?
10. Do you claim that the Instrument dated June 5, 1909, recorded in Conveyance Book 52, folio 639 of the Conveyance Records of Assumption Parish, Louisiana, alleged in Article 1 of the First Supplemental and Amended Petition, describes any lands other than the lands described in Articles 1 and/or 2 of the petition? If so, please identify the lands purportedly affected by the said June 5, 1909 instrument by governmental section, quarter-quarter sections, township and range.
Relators contend that the trial court abused its discretion in vacating the rule and ordering the interrogatories answered. On the other hand, however, respondent contends plaintiffs did not object within the ten day period provided in LSA-C.C.P. Article 1491, consequently plaintiffs "should not be permitted to shift the burden of proof with respect to respondent's right of discovery by proceeding upon a contradictory motion to strike in the form of a rule to show cause." In this connection it is noted that the cited codal article provides in part as follows:
"* * * Within ten days after service of interrogatories a party may serve written objections thereto. Answers to interrogatories to which objection is made shall be deferred until the objections are determined. * * *"
Neither the manner in which objections to interrogatories are to be made nor the precise time and circumstances under which such objections shall be disposed of are specifically provided by aforesaid Article 1491. It is significant to note at this juncture the provisions of LSA-C.C.P. Article 1511 which imposes penalties for refusal to answer interrogatories propounded. It is also worthy of note that in the case at bar the trial court issued an order for a contradictory hearing pursuant to the motion of the objecting parties herein who desired a judicial determination of their objections without exposing themselves to the penalties provided by LSA-C.C.P. Article 1511 for outright failure or refusal to answer. Under such circumstances we presume our esteemed colleague below considered plaintiffs' objections possessed sufficient merit to justify issuance of the order. The procedure followed appears reasonable and preferable to ruling upon objections to interrogatories without giving the propounder an opportunity to be heard.
Inasmuch as the law expressly relieves the objecting parties from answering until his objections are disposed of, it appears that some affirmative step must be taken by one of the parties to have such objections adjudicated. To say, therefore, that plaintiffs'"Motion to Strike Deposition" which specifically enumerates objections to all interrogatories does not constitute "written objection" is placing a rather strained and impracticable interpretation upon the motion. It is difficult indeed to conceive how an objection to the interrogatories in question could be more plainly and specifically expressed than by the "motion" filed by relators herein.
We unhesitatingly conclude, therefore, the "motion" filed by relators herein constituted valid objection to respondent's interrogatories which said objections deferred relators' obligation of answering *342 until said objections were disposed of as provided in LSA-C.C.P. Article 1491.
Passing now to a consideration of the interrogatories themselves, we desire to first point out certain general principles applicable to the discovery device and more particularly to the issue at hand.
The Louisiana Discovery Statute LSA-C.C.P. Articles 1421-1515, inclusive, is predicated almost exclusively upon Federal Rules 26-37, inclusive, which were adopted by our legislature almost verbatim excepting only certain mechanical changes necessary to adapt said Federal Rules for use in our state courts. See "Preliminary Statement", Editorial Comment, Title 3, Chapter 3, Page 633, Volume 3, West's Louisiana Statutes Annotated, Code of Civil Procedure.
In 35A C.J.S. verbo Federal Civil Procedure § 527, Page 785, we find a summation of the Federal Rules regarding discovery (equally applicable to the Louisiana statute) in which the following appears:
"The broad purpose of the discovery procedure is to permit mutual knowledge before trial of all relevant facts gathered by both parties so that either party may compel the other to disgorge whatever facts he has in his possession. The Federal Rules are intended to go far in making information known by one party available to the other, and they embody two guiding principles on the subject of discovery, the first being that every party to a litigation is entitled to secure all evidence, information, and documents germane to issues, even though they are in the possession of an adverse party, and the second being that such evidence, information, and documents should be made available before trial.
"The various instruments of discovery serve as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to the issues, so that the way is clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial. The general intent of the Rules, with certain exceptions, is early rather than late revelation, and the effect of the discovery procedure is to advance the stage at which facts are available to each party and thus eliminate to the fullest extent possible, prior to the time of trial, the possibility of surprise to either party."
From the foregoing it seems the announced purpose of the discovery statute is to insure a full and fair trial on the merits of each case by affording all litigants full opportunity to obtain the true facts pertinent to each individual case. To this end discovery also sanctions the disclosure of all issues, both legal and factual, intended to be relied upon by each litigant to eliminate the element of surprise and assure that each party may be fully aware of and prepared to meet, defend and answer all issues which may be presented during the trial irrespective of whether same be related to questions of law or fact. The foregoing was so held, in substance, by the Supreme Court of this state in State through Dept. of Highways, v. Spruell, 243 La. 202, 142 So.2d 396.
Also germane to the issue before the court is the following language contained in LSA-C.C.P. Article 1436:
"Unless otherwise ordered by the court as provided by Article 1452 or 1454, the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the demand or defense of the examining party or to the demand or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and locations of persons having knowledge of relevant facts. It is not ground for objection that the testimony will be inadmissible *343 at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."
Interrogatory Number 1 can serve no purpose other than to question the authority of plaintiffs' attorney of record to represent each plaintiff herein. Whether relators' attorney consulted each of his clients directly or indirectly or permitted each to see the petition and the supplemental petition prior to their filing is immaterial and irrelevant to the issues involved in this litigation. It is an ancient and time honored rule of law in this state that the authority of an attorney by whom an action is brought cannot be collaterally attacked nor can it be impugned by mere suggestion. The presumption of authority can only be challenged by direct action under oath. See Dipuma v. Anselmo, La.App., 137 So.2d 76, and cases therein cited. (Other cases to the same effect may be found in 3 West's La. Digest verbo Attorney and Client. Appropos the issue presently under consideration is the following language appearing in the case of Plaquemines Parish School Board v. Davis, La.App., 32 So.2d 391, which we approvingly quote as follows:
"Even the litigant whom the attorney claims to represent is affected by the presumption of authority to the extent that strong proof of want of authority must be produced.
"In Heirs of Brigot v. Brigot, 47 La.Ann. 1304, 17 So. 825, 826, the plaintiff offered an affidavit, duly authenticated, of widow Brigot, declaring that she had not authorized the attorney to represent her as defendant. The lower court held that the affidavit was ex parte and inadmissible, and the Supreme Court said that the ex parte affidavit in support of assertions made at the time when it was offered in evidence that the attorney was not authorized, was not even the commencement of proof; that it had none of the characteristics of proceedings taken contradictorily with parties in interest, and that it was only a sworn declaration offered without pleading or allegation of any kind. The court also said that affidavits against the acts of attorneys, as not having been authorized, had to be in support of issues directly presented. The Court said that:
"`The mere affirmation of a reputable attorney that he is the retained counsel in a cause has the sanctity of an oath. They (the attorneys at law) are the officers of the court, whose principal duty is to be true to the court and their clients.
"`The record and the allegations of counsel import absolute verity, as respects the authority to represent their clients.'
"In the syllabus of Bender v. McDowell, 46 La.Ann. 393, 15 So. 21, appears the following:
"`The substance of our jurisprudence on the subject is that a certain degree of sanctity attaches to the act of an attorney at law, as an officer of court, which raises a legal presumption that it was authorized, and imposes on the client denying his authority the duty of supporting his denial with an oath, in order to overcome that presumption, and put the opposite party to the proof of his authority.
"`But this rule is not exclusive of all others, and such an oath is not a condition precedent to the administration of any proof on the part of the party who denies the authority of the attorney. It is permissible for such party to go on the stand, and testify on the subject.' See also Boykin v. Holden, 6 La.Ann. 120; Dockham v. Potter, 27 La.Ann. 73, and Police Jury of Tangipahoa Parish v. Begnaud, 200 La. 1020, 1022, 9 So.2d 399.

*344 "It follows that even if the appellants themselves desired to repudiate the attorneys who purport to represent them, there would be a presumption that the attorneys had been authorized and this presumption would yield only to convincing proof."
Accordingly, we hold that the authority of relators' attorney of record cannot be collaterally attacked and that relators are not required to answer any interrogatories regarding an alleged lack of authority upon the part of their attorney of record until such alleged lack of authority is made an issue by pleading filed by respondent questioning said attorney-client relationship. Under the circumstances the learned trial judge erroneously required relators to answer Interrogatory Number One and his action in this respect must be set aside.
Granted that Interrogatory Number Two requests information concerning a document of public record and therefore equally available to respondent and conceding further that plaintiffs' response thereto may be objectionable under the best evidence rule, nevertheless, we believe respondent entitled to an answer thereto insofar as plaintiffs' reply may shed light upon the legal issues intended to be relied upon by plaintiffs at the trial.
Our careful consideration of Interrogatories Three through Nine, inclusive, seeks to elicit facts and admissions regarding a tax deed and related assessments, upon which defendants rely, which tax deed was expressly put at issue in Articles 2 and 3 of relators' first supplemental and amended petition wherein relators aver the same to be null and void. In effect said Interrogatories Three through Nine, inclusive, call for a statement of relators' position regarding documents upon which respondents will rely during trial. To the extent that relators' answer will clarify the issues posed by said documents, respondent is entitled to answers thereto.
Federal jurisprudence appears settled to the effect that the fact that parties interrogated are asked to state their position does not render the interrogatories objectionable. Thus in B. & S. Drilling Co. v. Halliburton Oil Well Cementing Co., D.C., 24 F.R.D. 1 (1959) at page 5, the court stated:
"Here defendant is seeking to determine what plaintiff contends or claims concerning a factual situation which would probably be relevant to the testimony of defendant's witnesses on trial. A plaintiff cannot be reluctant. In order to prepare to meet such an issue defendant asks what plaintiff contends and from what witnesses he obtained the information on which his contention is based. Such an inquiry is within the legitimate boundaries of discovery, even though plaintiff, his attorneys, or other investigators may have uncovered such facts after the cause of action arose and though the information may be in the possession of plaintiff's attorneys."
The fact that interrogatories may to a degree call for an expression of opinion or judgment likewise does not necessarily render them objectionable. In this regard we cite with approbation the following appearing in Territory of Alaska v. The Artic Maid, 135 F.Supp. 164 (D.C.Alaska 1955):
"However, there are decisions to the contrary, holding that the fact that interrogatories `to a degree' call for an expression of judgment or opinion does not condemn them for the basic purpose of depositiondiscovery procedure, that is, obtaining relevant information and narrowing the issues; that a party may be required to state what he intends to urge or will urge at the trial; that the purpose of interrogatories is to enable the proposing party to prepare for trial and that the opposing party is entitled to be informed as to what he will have to meet; that in passing upon objections to interrogatories the question *345 should not be, as an abstract or theoretical matter, whether the interrogatory calls for an expression of opinion or contention, but whether the answer thereto would serve any substantial purpose as intended by the discovery procedure; * * *.
"It is true that a party cannot be forced to prepare his opponent's case nor to make investigations for his adversary. But the objection that preparing an answer would be an undue burden is not available where the information can reasonably be furnished." (135 F. Supp. pages 165-166) See also Moore's Federal Practice, Vol. 4 (2nd Ed. 1950) Section 33.17.
We hold therefore Interrogatories Two "through Nine, inclusive, though calling for relators' opinion and expression of judgment are nevertheless relevant and proper inasmuch as they in effect require relators to state the issues which relators purport to raise predicated upon said documents. The spirit of the discovery statute requires that relators make known these issues in order that respondent may not be surprised at the trial and may ready its defense to meet each such issue.
Likewise we believe Interrogatory Number Ten relevant in that, although it requires plaintiffs to answer whether plaintiffs are claiming any lands other than those described in the original petition, it calls upon plaintiffs to declare all lands claimed by relators under a particular deed. The information sought by said interrogatory is pertinent to trial of the cause in that it will apprise defendants of precisely what lands plaintiffs are claiming and exactly what respondent will be called upon to defend.
We believe, however, the spirit as well as the letter of the Discovery Statute entitles the interrogator only to the information desired and does not contemplate that multiple parties of the same class (whether plaintiff or defendant) shall be compelled to answer when disclosure of one pursuant to interrogatories posed will fully apprise the interrogator of the knowledge sought. We likewise believe the present case to be the classic example of an instance wherein compelling each of numerous multiple plaintiffs (whose interests do not conflict and whose basic positions are identical insofar as the record shows) to answer identical interrogatories under circumstances which could only result in an endless dupilication of the exact same response, will serve no purpose intended by the discovery statute but only result in harassment of the parties sought to be interrogated. To require each of the 126 parties plaintiff herein to reply to respondent's queries will obviously serve no useful purpose. The position of one must obviously be the position of all. The only practical effect of compelling each relator to reply is to unduly delay the trial of this matter while 126 separate appearances are made before authorities empowered to administer oaths (in the event each answers separately) or obtaining 126 signatures to a single answer in the event relators replied in a joint response. The courts are clearly authorized to prevent such harassment when, in their discretion, such would result from the interrogatories posed. LSA-C.C.P. Article 1491.
In the interest of conserving the time of the litigants involved we have concluded to render judgment in this court appropriate with the views herein expressed rather than make the writ peremptory and order the learned trial court to enter such decree.
Accordingly, it is ordered, adjudged and decreed the alternative writ issued herein be and the same is hereby recalled, reversed and set aside and judgment rendered herein relieving all relators-plaintiffs of the obligation of answering Interrogatory Number One filed herein by defendant-respondent, Union Producing Company.
It is further ordered, adjudged and decreed that all plaintiffs-relators excepting relator, Sulia Gaudet, be and the same are hereby relieved of answering Interrogatories Two (2) through Ten (10), inclusive, *346 filed herein on behalf of said aforenamed respondent and that said relator, Sulia Gaudet, be and she is hereby ordered, directed and instructed to answer said Interrogatories Two (2) through Ten (10), inclusive, within ten days of the date of the receipt of this matter by the trial court on the remand hereinafter ordered, unless said time for answering shall be extended by proper order of the learned trial court issued subsequent to its receipt of this matter on remand.
It is further ordered, adjudged and decreed that this matter be and the same is hereby remanded to the trial court for further proceedings consistent with the views herein expressed.
Amended and remanded.