258 So.2d 629 (1972)
Beverly COUSINS et al.
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
No. 8834.
Court of Appeal of Louisiana, First Circuit.
February 24, 1972.
Rehearing Denied March 22, 1972.
*631 Horace C. Lane, Baton Rouge, for defendant-relator.
John D. Lambert, Jr., New Orleans, for plaintiff-respondent.
Before LANDRY, BLANCHE and TUCKER, JJ.
LANDRY, Judge.
State Farm Mutual Automobile Insurance Company (Applicant) seeks writs of certiorari, prohibition and mandamus to annul a subpoena duces tecum and a discovery proceeding order of the trial court commanding production in this proceeding of the entire file of an attorney who represented both Applicant and Applicant's insureds, plaintiffs herein and Respondents in writ, in a previous action brought against Applicant and Respondents jointly by third parties who obtained judgments against Applicant and Respondents in excess of Applicant's policy limits.
In this present action Respondents, as insureds under a liability policy issued by Applicant, claim the amount of the excess judgments rendered against them primarily on the ground that Applicant and the attorney engaged by Applicant to represent both Applicant and Respondents, could have settled the prior tort action within the policy limits but negligently and improperly failed to do so. We reverse the judgment which declined to set aside the order to produce the file pursuant to our Discovery Statute. We recognize and declare Respondents' right to subpoena the entire file under the circumstances hereinafter set forth, but set aside the order of subpoena for procedural reasons which will subsequently appear.
*632 This matter emanates from the case of Inabinet v. State Farm Mutual Automobile Insurance Company, La.App., 234 So.2d 827, in which plaintiffs therein were granted judgments against Applicant and Respondents jointly in the sum of $27,072.57. Applicant's coverage being limited to $10,000.00, Respondents were cast for the sum in excess of policy limits.
Respondents' petition recites that pursuant to Applicant's policy, Applicant was obligated to furnish and did furnish the services of Iddo Pittman, attorney-at-law, to represent both Applicant and Respondents in the Inabinet case. It is conceded that Mr. Pittman is not a party to this present proceeding, and that the sole defendant herein is Applicant in its capacity as Respondents' liability insurer.
Respondents seek recovery from their said insurer in the sum of $17,072.57, predicated upon the alleged mishandling of the defense of Inabinet, above. The several allegations of negligence and ineptness charged may be categorized as follows: (1) Failure to advise Respondents of the serious nature of the injuries suffered by plaintiff in Inabinet, above; (2) Failure of Pittman to keep Respondents fully informed as to the nature of the Inabinet claim and various developments therein; (3) Rejection by Pittman and Applicant of at least four offers made by the attorney for plaintiffs in Inabinet, above, to settle all claims for less than Applicant's policy limits; (4) Failure of Pittman to fully advise Respondent Sandra Cousins of her legal position as driver of the vehicle involved in the Inabinet case, and (5) Pittman's failure to fully inform Respondents as to their rights and positions in the Inabinet matter induced Respondents to sign a letter dated May 1, 1970, in which Respondents made certain acknowledgments they would not have otherwise made.
Although this present matter had not yet been set for trial, on October 26, 1971, Respondents caused to be issued herein an ex parte order for a subpoena duces tecum directing Pittman to produce in Court on November 19, 1971, his entire attorney's file in the Inabinet case on trial, on appeal to this Court, and on application to the Supreme Court for writs. Applicant promptly moved to set this order aside. Prior to November 19, 1971, Respondents secured an ex parte order pursuant to a Motion For Production of Evidence. This latter motion reiterated the same grounds advanced in support of the motion for subpoena duces tecum and prayed that Pittman be directed to produce his entire file in the Inabinet case. Respondents moved to dismiss this latter order. On December 10, 1971, the trial court heard Respondents' motions to dismiss both the order for the subpoena duces tecum and the subsequent Order to Produce. It is conceded that at the hearing, Applicant offered to produce certain documents, but objected to the orders requiring Pittman to produce his entire file. This offer was rejected by Respondents who insisted that Pittman be required to produce his complete file for Respondents' examination, and the attendant right to copy such documents as Respondents saw fit. The matter was heard by the trial court solely on argument of counsel, following which the lower court declined to set aside either order. The matter is before us on briefs.
Applicant correctly points out that the motion to produce could only have been granted pursuant to LSA-C.C.P. art. 1492, which recites:
"Upon motion of any party showing good cause therefor, and subject to the provisions of Article 1452, the court in which an action is pending or in which the judgment was originally rendered may:
(1) Order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, not privileged, which constitute or contain *633 evidence relating to any of the matters within the scope of the examination permitted by Article 1436 and which are in his possession, custody, or control;...."
The foregoing provision is part of our Discovery Statute, LSA-C.C.P. arts. 1421-1451, inclusive, which is patterned almost exclusively upon Federal Civil Rules 26-37, inclusive. Gaudet v. Lawes, La. App., 166 So.2d 337. Considering the source of our Discovery Statute, decisions of the Federal Courts interpreting similar Federal rules are persuasive though not necessarily controlling in instances of this nature. Smith v. Richardson, La.App., 200 So.2d 897. We note the United States Supreme Court has restricted the scope of Federal Rule 34 (the source of Article 1492, above) to parties to an action. In Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, the Court held that Federal Rule 34 permits "any party" to request production of documents from "any party", but that the rule does not extend either to counsel for a party or a witness who is not a party to the action. The obvious effect of Hickman, above, limits the production of documents for inspection, copying or photographing to actual parties to the litigation. Such interpretation appears reasonable, and we adopt it as our own. We note that as regards persons not parties to an action, LSA-C.C.P. art. 1354 provides that documents may be subpoenaed of anyone, even persons not parties to the action.
Applicant attacks the order for subpoena duces tecum on three basic grounds. It is urged that LSA-C.C.P. art. 1452 requires a showing of good cause to support either a subpoena duces tecum pursuant to LSA-C. C.P. art. 1354, or an order to produce documents conformably to LSA-C.C.P. art. 1492, and no such showing was made herein inasmuch as the matter was heard below on oral argument. In this connection Applicant contends the request for the entire file is unreasonable and oppressive in that it represents a "fishing expedition." Next, applicant claims the order for subpoena duces tecum violates LSA-C.C.P. art. 1354, which provides that a subpoena may require production of documents only at a trial or hearing. In this regard, Applicant correctly notes that the subpoena in question called for production of documents on a date which was not a date set for trial.
Finally, Applicant argues that in ordering production of the attorney's entire file, the subpoena violates LSA-C.C.P. art. 1452, which provides in pertinent part as follows:
"The court shall not order the production or inspection of any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor, expert, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice. The court shall not order the production or inspection of any part of the writing that reflects the mental impressions, conclusions, opinions, or theories of an attorney or an expert."
We consider first the claim that the subpoena duces tecum is invalid for lack of a showing of good cause for its issuance. In so contending, Applicant relies upon Tibbs v. Housing Authority of New Orleans, La.App., 204 So.2d 70, which involved the validity of a subpoena duces tecum ordering defendant insurance company to produce its entire file of the accident sued upon by plaintiff. In Tibbs, the Court noted that the subpoena was obviously issued for discovery purposes and for that reason, Articles 1452 and 1492, above, were deemed applicable. So finding, the Court concluded that the "good cause" provision of Article 1452, above, was applicable, and since no evidentiary hearing had been held by the trial court, the subpoena was quashed for lack of a showing of good cause. However, the Court in Tibbs, above, noted its former decision *634 in American Mark Distrib. Corp. v. Louisville & N. R. Co., La.App., 180 So.2d 869, which held that under certain circumstances good cause might be shown upon the averments supporting the application for subpoena duces tecum and the facts of the case in general.
We are in accord with the conclusion that good cause must be shown to support the issuance of a subpoena duces tecum for the reasons set forth in the above cited authorities, and for the additional reason that we believe the requirement of "good cause" is at least implied in LSA-C.C.P. art. 1354. We note that Article 1354, above, provides for the vacating or modification of any subpoena found to be unreasonable or oppressive. We deem such language to impliedly require good cause. Our procedural laws, including those providing for the issuance of subpoenas and discovery orders, are designed to insure full disclosure of all facts attending a judicial controversy to the end that justice will prevail, and that all litigation will be decided meritoriously. They are intended to prevent surprise or the withholding or suppression of material evidence or testimony to the prejudice of a litigant. However, where all the material facts are available, Courts will not permit a party to proceed upon a "fishing expedition." See Self v. Employers Mut. Liability Ins. Co. of Wis., La.App., 90 So.2d 547, and authorities therein cited.
It is equally well settled that considerable discretion is vested in trial courts with respect to the issuance of a subpoena duces tecum. Cali v. Cloverland Dairy Products Co., La.App., 21 So.2d 166; Murison v. Butler, 18 La.Ann. 296. In the instant case, the motion for subpoena duces tecum recites that the attorney representing Respondents and Respondents' liability insurer in a tort action brought jointly against them by third parties mishandled the claim insofar as Respondents' interests are concerned. It is asserted that the attorney failed in numerous respects to advise Respondents of their right to demand settlement by the insurer within policy limits, and also failed on several occasions to settle the claims within the insured policy limits. It is further claimed that the attorney's failure to fully advise Respondents as to their rights induced Respondents to sign a document containing concessions and acknowledgments to which Respondents would not have acquiesced had Respondents been fully informed.
It is readily apparent that the documents sought are indispensable to Respondents' asserted cause of action. Equally obvious is the fact that this vital evidence can only be obtained from the attorney's file. To deny Respondents access to the documents sought herein would in effect be a denial of justice as it would place beyond Respondents' reach the sole source of information available to prove their claim. We find, therefore, that Respondents' request is not a mere "fishing expedition", and that "good cause" is shown on the face of Respondents' petition and motion for subpoena duces tecum. We likewise find that the trial court did not abuse the discretion vested in him in decreeing that Respondents were entitled to the subpoena issued.
A more difficult question is posed by Applicant's contention that the subpoena violates the prohibition in LSA-C.C.P. art. 1452 against ordering production or inspection of any part of a writing which reflects the mental impressions, conclusions, opinions or theories of an attorney or expert. Normally, such an issue arises as between one party who wishes to obtain information from an expert or attorney engaged by legal adversary. In such instances, the party desiring to be informed bears no attorney-client relationship to the attorney; neither is he the employer of the expert. Obviously in such instances, the prohibition contained in Article 1452, above, regarding the mental impressions, conclusions, theories and opinions of the attorney or expert may be invoked by the client or litigant who engaged the expert or retained the attorney to represent his individual, adverse *635 interests. In the case at hand, however, we are concerned with an entirely different situation. We are faced with the apparently res nova situation wherein a single attorney represented multiple defendants in a tort action. The petition alleges in effect that the attorney was engaged to represent Respondents not only to the extent of policy limits, but to defend the entire claim against Respondents.
We are mindful of State, Through the Department of Highways v. Spruell, 243 La. 202, 142 So.2d 396, wherein, under different factual circumstances, our Supreme Court held the prohibition in Article 1452, above, to be absolute. In Spruell, the court ruled that whereas plaintiff's expert could be deposed by a defendant pursuant to LSA-C.C.P. art. 1436, such a witness could not be required to produce documents reflecting his mental impressions, conclusions, opinions or theories, even though the expert might need such documents to answer some interrogatories or questions.
The instant case is not one to depose a witness pursuant to LSA-C.C.P. art. 1436, above, as was the case in Spruell, above. We also note that Article 1436, above, makes no provision for the production of documents. It does, however, as noted in Spruell, above, provide that any person may be deposed, even one not a party to the litigation.
We find the case at hand distinguishable from Spruell in one salient feature, namely, Respondents seek to obtain documents which may reflect the opinions, theories, mental impressions and conclusions of an attorney who represented Respondents in a former action, and whose conclusions, theories and opinions therein are vital to Respondents' present action which stems from the attorney's representation of Respondents in the prior matter.
Our conclusion that the prohibition against disclosure of the opinions and theories of an attorney or expert contained in Article 1452, above, is inapplicable in cases of this nature, is predicated to some extent on LeBlanc v. Broussard, La.App., 198 So. 2d 193, and Marcuse v. Kramer, Court of Appeal, Orleans, 5 Orleans App. 247, both of which are analogous only. In LeBlanc, above, an attorney appearing on behalf of plaintiff testified concerning an agreement between plaintiff and defendant regarding ownership of the note on which suit was brought. The trial court sustained defendant's objection to such testimony on the ground of privileged communication. The Court of Appeal ruled that since the attorney-witness represented both plaintiff and defendant in the transaction renaming the note, the privileged communication provision of LSA-C.C. art. 2283 was inapplicable, and the trial court should have allowed the testimony.
Similarly in Marcuse, above, the court held that where an attorney represents several parties in a transaction, communications made to him by the parties are not privileged, and in a subsequent suit between the parties, the attorney may testify as to the content of such professional communication.
We are of the view that as regards an attorney's client or the expert's retainer, the opinions, theories and conclusions of the attorney or expert constitutes the fundamental reason for the retainment or engagement. In such instances, the client or employer engages the attorney or expert for the express purpose of obtaining the benefit of the expertise possessed by the attorney or expert. The client or employer is seeking expert advice, opinion and counsel respecting his rights and obligations as regards the particular matter. We believe it elementary that the client is entitled to the benefit of the opinions, conclusions and theories of his attorney or expert as may be reflected from the contents of the attorney's or expert's file. We deem it equally basic that an attorney or expert may not be permitted to withhold any information that would adversely affect the legal rights of a client or employer on the ground that it would disclose the attorney's or expert's opinions or conclusions *636 concerning the rights of another client whom the attorney represented simultaneously in the same matter. Under such circumstances, it is our opinion that the attorney must disclose to either client all opinions, conclusions and theories regarding the client's rights and position, even in communications to other parties whom the attorney also represented in the same matter. Certainly it is the attorney's duty to fully inform each client, that is what the attorney is engaged to do, and especially so, if there exists the slightest conflict of interest. We likewise believe that where parties display mutual trust in a single attorney by placing their affairs in his hands, each must be deemed to consent that the attorney may disclose to the others any and all opinions, theories or conclusions expressed in any communication to any other party whose rights or position is therein involved or affected thereby. In such circumstances, we believe that every party is entitled to every opinion expressed by the expert regarding his particular situation should such opinion become material in a subsequent action between the parties and arising from the matter in which the opinion was expressed.
As urged by Applicant, the subpoena incorrectly ordered production of the file on a date other than that set for trial or hearing contrary to LSA-C.C.P. art. 1354. The pertinent statute expressly declares that a person may be ordered to produce books, papers or documents "at the trial of hearing." Prior to adoption of Article 1354, above, Louisiana Code of Practice Article 143 provided that a person might discharge his obligation under a subpoena by merely depositing the requested documents in the registry of the trial court. However, the redactors of our Code of Civil Procedure, in Footnote (b) under Article 1354, above, have made it clear that the former rule has been changed and that production of documents pursuant to a subpoena is intended solely as an adjunct to the testimony of a witness, and for that specific reason, the statute envisions production of documents at the trial or hearing, and not for inspection, copying or reproduction pursuant to discovery procedure. While we might seriously question the wisdom of such a rule, the legislative intent has been made perfectly clear and is binding upon the courts. In view of the mentioned footnote, we conclude that at the trial or hearing means at a trial before a court of law or a hearing before an administrative board, commission or body possessing quasi-judicial authority. We hold, therefore, that the trial court could only order production of the file at the time of trial. In that respect, the subpoena is invalid and must be set aside. We recognize, however, the right of the trial court to issue a subpoena requiring production of the file on the date of trial below.
The application for writs is made peremptory, and it is hereby ordered, adjudged and decreed that the Honorable Thomas W. Tanner, Judge, Twenty-second Judicial District Court, St. Tammany Parish, be and he is hereby directed and commanded to annul and set aside the subpoena duces tecum and Discovery Statute Order to produce documents issued herein requiring Applicant to produce documents in this proceeding; all costs of this application for writs to be paid by Applicant and Respondents in the proportion of one-half by Applicant and one-half by Respondents.
Writ made peremptory.