584 So.2d 300 (1991)
TESTA DISTRIBUTING COMPANY, INC., et al.
v.
Leon R. TARVER, II, Secretary, Department of Revenue and Taxation, State of Louisiana, et al.
No. CW 90 2240.
Court of Appeal of Louisiana, First Circuit.
June 27, 1991.
*302 G. Blane Clark, Jr., Bayon Rouge, for Testa Distributing Co., Inc., et al.
Douglas F. Herbert, Baton Rouge, for Leon R. Tarver II, Secretary Dept. of Revenue and Taxation, State of La., et al.
Before COVINGTON, C.J., and LANIER and GONZALES, JJ.
LANIER, Judge.
This action is a suit by several beer distributors against several state agencies seeking to have a state beer excise tax declared unconstitutional and seeking a refund of taxes paid under protest. Suit was filed by Testa Distributing Company, Inc.; G & G Distributing Corporation; Natchitoches Beverage, Inc.; Coors of Northeast Louisiana, Inc.; Beverage Sales, Inc.; and Venture Marketing Corporation (hereinafter collectively referred to as the (taxpayers) against Leon R. Tarver, II,[1] Secretary of the Department of Revenue and Taxation (Secretary); Arnold M. Lincove, Secretary of the Department of Economic Development; William J. Guste, Jr., Attorney General for the Department of Justice; Dennis Stine,[2] Commissioner of the Division of Administration; and the Board of Commerce and Industry, through its chairman, J.R. Querbes, III. On October 5, 1989, the taxpayers propounded interrogatories to and filed requests for production of documents and admission of *303 facts with the Secretary. On August 17, 1990, the taxpayers filed a motion to compel answers to their interrogatories and request for production of documents.[3] On September 14, 1990, the Secretary responded by providing the information requested or by objecting on the ground of confidentiality pursuant to La.R.S. 47:1508. A hearing on the motion to compel was held on September 28, 1990, and the trial court by orders dated September 28, 1990, and October 16, 1990, granted the motion to compel.[4] On October 24, 1990, the Secretary requested that the trial court reconsider its ruling. The trial court denied the motion for reconsideration on November 29, 1990. On application of the Secretary, we granted a writ of certiorari to review this ruling.

FACTS
In their petition, the taxpayers allege the following facts:
3.
Plaintiffs are all dealers handling beverages of low alcoholic content in Louisiana who, under protest, have paid state beer excise taxes levied by the State of Louisiana by authority of the provisions of La.R.S. 26:342, et seq. and which now file this action to recover the taxes paid under protest. Taxes levied by said La. R.S. 26:342 are hereafter sometimes referred to as the "Beer Tax" or the "Beer Taxes." Furthermore, Plaintiffs are entitled to a declaratory judgment finding that La.R.S. 26:342, as amended in 1974, 1979 and 1987, has since 1974 and continues to be void and in violation of the provisions and prohibitions of the United States Constitution and the Louisiana Constitution of 1974.
4.
At all times pertinent herein, the beverages of low alcoholic content handled by Plaintiffs upon which the Beer Taxes were erroneously paid, were brewed and produced outside of the State of Louisiana.
5.
Plaintiffs filed timely returns and timely remitted Beer Taxes for the taxable period constituting the month of April, 1989, and at the time of such payment, advised the Secretary of the Department of Revenue and Taxation of the Plaintiffs' intention to file suit for the recovery of such taxes, requesting that the amount remitted be placed in an escrow account to be held by the Secretary or his duly authorized representative pending the outcome of this suit.
6.
Plaintiffs intend to file timely returns for and remit to the Secretary of the Department of Revenue and Taxation Beer Taxes for the tax periods commencing May, 1989 and the months thereafter, all under similar protests, and the money so paid should be received by the Secretary of the Department of Revenue and Taxation and placed in an escrow account to be held pending the outcome of this *304 suit, all as provided for in La.R.S. 47:1576.
7.
The amounts remitted by Plaintiffs, under protest, for the tax period of April, 1989, are set forth on Exhibit "A" attached hereto.
8.
During the periods commencing upon the effective date of Acts 1974, No. 592 and up until the commencement of this action, Plaintiffs have filed timely returns and timely, but erroneously, have remitted Beer Taxes for the taxable periods falling within the years shown on Exhibit "B" attached hereto and in the amounts set forth on said Exhibit "B".
9.
Plaintiffs have filed a petition with the Board of Tax Appeals seeking the recovery of Beer Taxes erroneously paid into the Treasury of the State of Louisiana, being those Beer Taxes referred to in paragraph 8 hereof (which other proceeding is hereinafter referred to as the "BTA Proceeding").
10.
Commencing with the effective date of Acts 1974, No. 592 and as noted below, various exemptions from the Beer Taxes were granted to Louisiana breweries handling beverages of low alcoholic content brewed and produced by them inside the State of Louisiana. Those exemptions were not made available to Plaintiffs or others like them who handled beverages brewed and produced by breweries situated outside the State of Louisiana.
11.
Between the effective date of Acts 1974, No. 592, and July 13, 1979, the provisions of La.R.S. 26:342 levying the Beer Tax provided as follows:
"There is levied and imposed on all beverages of low alcoholic content handled in Louisiana an excise tax of ten dollars per barrel containing not more than thirty-one gallons, and at a like rate for fractional parts of a barrel. However, the tax shall be five dollars per barrel upon the first thirty thousand barrels of beverages of low alcoholic content brewed and produced inside the State of Louisiana for which a tax liability is incurred in each calendar year by a brewery situated within the state."
Between July 13, 1979 and the effective date of Acts 1987, No. 696, Section 1, the provisions of La.R.S. 26:342 provided as follows:
"A. Except as otherwise provided herein, there is levied and imposed on all beverages of low alcoholic content handled in Louisiana an excise tax of ten dollars per barrel containing not more than thirty-one gallons, and at a like rate for fractional parts of a barrel.
B. The tax levied and imposed by this Section and incurred in each calendar year on beverages of low alcoholic content brewed and produced by a brewery within the state of Louisiana shall be levied at the following rates:
(1) In 1979, any tax hereunder shall be due and owing:
(a) On the first 60,000 barrels after the effective date of this Actno tax.
(b) On all barrels in excess of 60,000 barrels after the effective date of this Actten dollars per barrel.
(2) In 1980, any tax hereunder shall be due and owing:
(a) On the first 45,000 barrelsno tax.
(b) On all barrels in excess of 45,000 barrelsten dollars per barrel.
(3) In 1981, any tax hereunder shall be due and owing:
(a) On the first 35,000 barrelsno tax.
(b) On all barrels in excess of 35,000 barrelsten dollars per barrel.
(4) In 1982, any tax hereunder shall be due and owing:
(a) On the first 30,000 barrelsfive dollars per barrel.

*305 (b) On all barrels in excess of 30,000 barrelsten dollars per barrel.
C. The provisions of Subsection B shall apply only to a brewery which is actively and directly owned, managed, and operated by an authorized legal entity which has owned, managed, and operated a brewery in this state for at least twelve consecutive months."
Since the effective date of Acts 1987, No. 696, Section 1, the provisions of La.R.S. 26:342 provided as follows:
"There is levied and imposed on all beverages of low alcoholic content handled in Louisiana an excise tax of ten dollars per barrel containing not more than thirty-one gallons, and a like rate for fractional parts of a barrel."
12.
For a portion of 1982 and years subsequent to 1982, the legislative scheme exempting Louisiana breweries and beverages from the payment of Beer Taxes was continued in effect by the State of Louisiana through the adoption and implementation of the provisions of La.R.S. 47:4301, et seq. providing authority to the Louisiana Board of Commerce and Industry to grant certain exemptions to existing manufacturing establishments in Louisiana.
13.
Acting pursuant to the authority established under the provisions of La.R.S. 47:4301, et seq., the Board of Commerce and Industry did, by instrument signed December 9, 1982 (the "Dixie Contract"), grant to Dixie Brewing Company or Dixie Brewing Company, Inc. (collectively, "Dixie Brewing Company"), a Louisiana brewery, an industrial tax exemption for Beer Taxes owed by Dixie Brewing Company to the State of Louisiana in an amount not to exceed $3,300,000 over a 51 month time period beginning October 1, 1982, and ending December 31, 1986. The said exemption applied to all Beer Tax due to be paid by Dixie Brewing Company under La.R.S. 26:342 for beer manufactured at its brewery located at 2537 Tulane Avenue, New Orleans, Louisiana, and sold in the State of Louisiana, for the months of October, November and December in 1982 and on the first 75,000 barrels of beer for the calendar years of 1983, 1984, 1985 and 1986.
14.
Upon information and belief, Plaintiffs aver that Dixie Brewing Company did, in fact, take advantage of the exemptions thus granted to it by statute from 1974 through 1982, and by the Board of Commerce and Industry in the Dixie Contract from 1982 until 1986, and did not pay the Beer Tax levied under La.R.S. 26:342 for beer manufactured at its brewery located at 2537 Tulane Avenue, New Orleans, Louisiana, and sold in the State of Louisiana in the amounts exempt by statute and the Dixie Contract.
15.
The Board of Commerce and Industry, with the consent of then Governor Edwin W. Edwards, took action to revoke the Dixie Contract and Plaintiffs are informed and believe that the revocation of said Dixie Contract and the tax exemption provided by it was effective April 11, 1986, but the full annual benefit thereof for 1986 had previously been enjoyed by Dixie Brewing Company.
16.
At all times pertinent herein, Plaintiffs were in competition with Dixie Brewing Company in connection with the sale of beverages of low alcoholic content in the State of Louisiana, however, unlike Dixie Brewing Company, Plaintiffs did not benefit and have not benefitted [sic] from any exemption, exclusion or reduction in the Beer Tax in their respective handling of beverages of low alcoholic content.
17.
The Louisiana taxing scheme provided a direct commercial advantage to Dixie Brewing Company and continues to provide or has the potential to provide a direct commercial advantage to any other *306 Louisiana brewery taking advantage of an exemption and in doing so, unlawfully discriminated and may continue to discriminate or has the potential to continue to discriminate, in favor of the handling by Louisiana breweries of beverages of low alcoholic content brewed and produced in Louisiana against the handling by other persons of beverages of low alcoholic content not brewed and produced in Louisiana.
18.
By reason of the foregoing, the imposition of the Beer Tax upon Plaintiffs was and is violative of the Commerce Clause of the United States Constitution (U.S. Constitution, Article 1, Section 8, CI. 3), as well as the Equal Protection Clauses of both the United States and Louisiana Constitutions (U.S. Constitution, Amendment XIV, Section 1; Louisiana Constitution of 1974, Article 1, Section 3)....
19.
In addition to discriminating against dealers handling beverages of low alcoholic content brewed and produced outside of the State of Louisiana, the legislative scheme described above discriminated and may continue to discriminate in favor of Louisiana breweries and against dealers who are not Louisiana breweries but who handle beverages of low alcoholic content brewed and produced in Louisiana. Thus, while Dixie Brewing Company received an exemption in connection with its own handling of Dixie products, dealers which were not breweries did not enjoy the same exemption in their handling of Dixie products. This practice was discriminatory and in violation of the Equal Protection Clauses of the United States and Louisiana Constitutions.
20.
Pursuant to a stipulated judgment signed by the Chairman of the Board of Tax Appeals on December 19, 1988, the Governor of the State of Louisiana, the Attorney General of the State of Louisiana, the Secretary of the Department of Revenue and Taxation of the State of Louisiana, and certain beer distributors entered into a stipulated judgment in certain matters filed with the Louisiana Board of Tax Appeals under Docket Nos. 2845, 2893, 2884, 2885 and 2883.
21.
Pursuant to a stipulated judgment signed by the Honorable Judges of Divisions E, K and I of the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana, on December 19, 1988 and December 20, 1988, the Governor of the State of Louisiana, the Attorney General of the State of Louisiana, the Secretary of the Department of Revenue and Taxation of the State of Louisiana, and certain beer distributors entered into a stipulated judgment in certain matters filed in the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana, under Suit Nos. 295,200; 294,130; 296,285; 296,532; 296,531; 297,059; 297,097; and 296,258.
22.
Pursuant to the two stipulated judgments referred to in paragraphs 20 and 21 above, the beer distributors listed on Exhibit"C" attached hereto (the "Exempted Dealers") received credits in the amounts set forth on Exhibit "C" attached hereto to be used against Beer Taxes to be owed by the Exempted Dealers or their successors in the future commencing on the dates of the stipulated judgments....
23.
The Exempted Dealers and the Plaintiffs are similarly situated taxpayers.
24.
The Plaintiffs are in direct competition with the Exempted Dealers.
25.
The levying, by the State of Louisiana, of Beer Taxes against the Plaintiffs without *307 the benefit of any exemptions or credits in their favor, while at the same time the State of Louisiana is granting the Exempted Dealers the benefit of credits against the payment of Beer Taxes, is a violation of the Equal Protection Clauses of the United States Constitution and the Louisiana Constitution.
26.
Therefore, the Louisiana taxing scheme, (i) from 1974 through 1982 was unconstitutional because the taxing statute, La.R.S. 26:342, was facially discriminatory, (ii) from 1982 through 1986 was unconstitutional as a result of the twin statutory structure (La.R.S. 26:342 and 47:4301, et seq. granting Dixie Brewing Company an exemption by contract, (iii) from 1986 to the present was and is unconstitutional as a result of the twin statutory structure creating the potential for exemptions to be granted to local breweries and as a result of the credits granted the Exempted Dealers.
27.
The tax schemes described above were and are illegal. Any Beer Taxes collected thereunder were, and any Beer Taxes collected thereunder in the future will be, collected illegally.
Attached hereto as Appendix "A" are Exhibits A, B and C.

MOTION TO COMPEL
The Secretary contends the trial court erred in ordering answers to certain interrogatories and the production of certain documents because they are privileged under La.R.S. 47:1508 and not discoverable under La.C.C.P. art. 1422. The taxpayers reply that the Secretary waived his right to object by failing to timely object and, in the alternative, his objection of confidentiality under La.R.S. 47:1508 is not valid.
The basic objectives of the Louisiana discovery process are (1) to afford all parties a fair opportunity to obtain facts pertinent to the litigation, (2) to discover the true facts and compel disclosure of these facts wherever they may be found, (3) to assist litigants in preparing their cases for trial, (4) to narrow and clarify the basic issues between the parties, and (5) to facilitate and expedite the legal process by encouraging settlement or abandonment of less than meritorious claims. Hodges v. Southern Farm Bureau Casualty Insurance Company, 433 So.2d 125 (La.1983); Cantrelle Fence and Supply Co., Inc. v. Allstate Insurance Company, 550 So.2d 1306 (La.App. 1st Cir.1989), writ denied, 559 So.2d 123 (La.1990). The discovery statutes are to be liberally and broadly construed to achieve their intended objectives. Hodges v. Southern Farm Bureau Casualty Insurance Company, 433 So.2d at 129; Cantrelle Fence and Supply Co., Inc. v. Allstate Insurance Company, 550 So.2d at 1309.
La.C.C.P. arts. 1422-1425 define the scope of permissible discovery and are applicable to all discovery devices. La. C.C.P. arts. 1459, 1461 and 1466. Generally, parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action; it is not a ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. La.C.C.P. art. 1422; Hodges v. Southern Farm Bureau Casualty Insurance Company, 433 So.2d at 129; Wilson v. Wilson, 525 So.2d 671 (La.App. 1st Cir. 1988). The party seeking an order to compel discovery has the burden of proving that the discovery sought is within the scope of La.C.C.P. arts. 1422-1425. Fuller v. Wal-Mart Stores, Inc., 519 So.2d 366 (La.App. 2d Cir.1988). Thus, the party seeking an order to compel discovery has the burden of proving that the discovery sought is relevant to the subject matter involved in the pending action.
A trial court has broad discretion in discovery matters, including discretion to order discovery under La.C.C.P. art. 1469. Laburre v. East Jefferson General Hospital, 555 So.2d 1381 (La.1990); Wilson v. Wilson, 525 So.2d at 672.

*308 Waiver of the Right to Object

The taxpayers contend the Secretary waived his right to object to their interrogatories on the ground of La.R.S. 47:1508 because he failed to timely file his objections on this basis.[5]
La.C.C.P. art. 1458 provides the following:
Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the reasons for objection shall be stated in lieu of an answer. The answers are to be signed by the person making them, and the objections signed by the attorney making them. The party upon whom the interrogatories have been served shall serve a copy of the answers, and objections if any, within fifteen days after the service of the interrogatories, except that a defendant may serve answers or objections within thirty days after service of the petition upon that defendant. The court may allow a shorter or longer time. The party submitting the interrogatories may move for an order under Article 1469 with respect to any objection to or other failure to answer an interrogatory. (Emphasis added)
La.C.C.P. art. 1462(B) provides the following:

The party upon whom the request [for production of documents] is served shall serve a written response within fifteen days after service of the request, except that a defendant may serve a response within thirty days after service of the petition upon that defendant. The court may allow a shorter or longer time. With respect to each item or category, the response shall state that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for objection shall be stated. If objection is made to part of an item or category, the part shall be specified. The party submitting the request may move for an order under Article 1469 with respect to any objection to or other failure to respond to the request, or any part thereof, or any failure to permit inspection as requested. (Emphasis added)
The Third Circuit in Chambers v. Ortho Pharmaceutical Corporation, 383 So.2d 46, 51 (La.App. 3rd Cir.1980) discussed the waiver of the right to object to interrogatories and stated the following:
We disagree with plaintiff's contention that defendant waived its right to answer or object to the interrogatories when it failed to do so within the fifteen day answer period provided in La.C.C.P. Article 1458. We interpret that Article to mean that if the interrogated party does not answer or object to the interrogatories within fifteen days, he is exposing himself to the risk that the party propounding the interrogatories will take advantage of La.C.C.P. Article 1469 by filing a rule to compel the delinquent party to furnish the answers. As long as the party awaiting the answers does not avail itself of the right to compel answers under Article 1469, the interrogated party is free to respond and/or object to the interrogatories without waiving any rights.
This situation is analogous to one in which a defendant fails to answer or otherwise respond to plaintiff's petition within fifteen days. This failure then exposes the defendant to the risk that the plaintiff will obtain a default judgment against him. But as long as the default judgment is not entered against *309 the defendant he is free to file exceptions or to answer the petition.
A similar set of circumstances existed in Trainor v. Young, 348 So.2d 1004 (La.App. 2nd Cir.1977), writ denied 351 So.2d 169 (La.1977). There, plaintiffs failed to timely answer defendants' interrogatories, and on April 13, 1977, the District Judge ordered plaintiffs to show cause why answers should not be filed by April 25th, or have their suit dismissed. On April 21st plaintiffs answered all but one of the questions. The answer to this question, plaintiffs asserted, was not discoverable and they sought a protective order to that effect. The court denied their protective order and plaintiffs filed for writs, which were granted by the Second Circuit.
The Second Circuit reversed the trial court and granted the protective order, holding that plaintiffs did not waive their right to object to the interrogatories since the interrogatories were answered prior to the return date of the rule to show cause and since the plaintiffs moved for a protective order pursuant to La.C.C.P. Article 1426.
In our case, the plaintiff never filed a rule to compel answers until after the interrogatories had been answered or objected to on October 25, 1979. Although plaintiff objected to the order granting defendant an extension of time, nothing in the law requires that this extension be asked for within the initial fifteen day time limit. Nor does the law preclude the trial judge from granting such an extension of time, even if the request is made after the fifteen day time period. Inasmuch as the answers and objections were filed prior to any order to compel answers, and were filed while the extension order was still in effect, we feel that the plaintiff's claim that Ortho waived its right to answer and/or object is without merit.
The Second Circuit, in Trainor v. Young, 348 So.2d 1004, 1006 (La.App. 2d Cir.), writ denied, 351 So.2d 169 (La.1977), stated the following:
Defendants contend plaintiffs waived any objection to the interrogatories by failing to timely object to the relevancy of the questions, citing La.C.C.P. Article 1458. The cited article does not provide that failure to timely object will constitute a waiver. To the contrary, it provides, "The party submitting the interrogatories may move for an order under Article 1469 with respect to any objection to or other failure to answer an interrogatory." Article 1469 sets up the procedure for compelling a party to answer interrogatories. As previously stated, defendants filed a motion to compel plaintiffs to answer the interrogatories and prior to the return date of the rule to show cause plaintiffs answered, and also filed a motion for a protective order pursuant to C.C.P. Article 1426. Under the facts of this case we find plaintiffs did not waive their right to object to the interrogatories.
We think the interpretation of La. C.C.P. art. 1458 by the Second and Third Circuits is correct and adopt it. Since the language of La.C.C.P. art. 1462(B) is similar to that of La.C.C.P. art. 1458, we will give it a similar interpretation with regard to the waiver of the right to object.[6]
In our case, the taxpayers propounded interrogatories and filed a request for production of documents on October 5, 1989. The Secretary failed to timely answer the interrogatories or produce the documents. On August 17, 1990, the taxpayers filed a motion to compel answers to their interrogatories and for production of the documents. A hearing on the rule to *310 show cause was set for September 28, 1990. On September 14, 1990, the Secretary filed answers and/or objections to the interrogatories and requests for production of documents. Under the facts of this case, we find the Secretary did not waive his right to object.

Validity of the La.R.S. 47:1508 Objection
The Secretary contends that some of the discovery sought is privileged and confidential pursuant to La.R.S. 47:1508.[7]
La.R.S. 47:1508 provides, in pertinent part, as follows:
Except as otherwise provided by law, the records and files of the secretary of the Department of Revenue and Taxation or the records and files maintained pursuant to a tax ordinance, excluding ad valorem property taxes and ad valorem property tax assessment rolls, of any political subdivision are confidential and privileged, and no person shall divulge or disclose any information obtained from such records and files except in the administration and enforcement of the tax laws of this state or of a political subdivision of this state....
. . . . .
Neither the secretary nor any employee engaged in the administration or charged with the custody of any such records or files shall be required to produce any of them for inspection or use in any action or proceeding, except in an action or proceeding in the administration or enforcement of the tax laws of this state or of a political subdivision. (Emphasis added)
When used in the Revised Statutes, the word "shall" is mandatory. La.R.S. 1:3; Succession of Holloway, 531 So.2d 431 (La. 1988); Lindner v. Lindner, 569 So.2d 173 (La.App. 1st Cir.1990); In the Matter of Marine Shale Processors, Inc., 566 So.2d 994 (La.App. 1st Cir.), writ denied, 568 So.2d 1055 (La.1990). Cf. La.C.Cr.P. art. 5; La.C.J.P. art. 4, La.C.C.P. art. 5053. Violation of the mandatory prohibitions in La. R.S. 47:1508 can result in criminal liability. La.R.S. 47:1508(C) and 1508.1.
The interrogatories objected to by the Secretary pursuant to La.R.S. 47:1508 are as follows:
Interrogatory No. 8:
Since 1974, have you granted or allowed any exemptions to be taken with respect to all or a portion of the Beer Taxes owed by a taxpayer? If so, please state the exemptions granted or allowed in detail, including the years in which the exemptions were granted or allowed and the amounts of the exemptions. You should include in your response, by way of example, any exemptions granted by statute or by contract with the Board of Commerce and Industry.
Interrogatory No. 9:
Have you granted any refunds to any beer distributors for Beer Taxes paid in the past as a result of or arising out of a claim by taxpayers that the Beer Tax was unconstitutional under either or both the United States or Louisiana Constitutions? If so, please give the details concerning the granting of these refunds.
Interrogatory No. 10:
Have you granted any credits to be applied against any future Beer Taxes or any other taxes to any beer distributors as a result of or arising out of a claim by taxpayers that that [sic] the Beer Tax was unconstitutional under either or both the United States or Louisiana Constitutions? If so, please give the details concerning the granting of these credits.
Interrogatory No. 11:
In the event that you have granted either refunds or credits to any taxpayers as a result of their claim that the Beer Taxes were unconstitutional or in settlement of any litigation wherein this claim was in dispute, please describe in *311 detail the differences between those taxpayers [sic] taxable activities and the taxable activities of the Petitioners herein. This should include the settlements of the following suits which were filed in the 19th Judicial District Court, East Baton Rouge Parish, Louisiana: Suit Nos. 295,200; 294,130; 296,285; 296,532; 296,531; 297,059; 297,097; and 296,258; and the settlement of the following proceedings in the Board of Tax Appeals: Docket Nos. 2845, 2893, 2884, 2885 and 2883.
Interrogatory No. 12:
Please list and describe any credits taken by beer distributors since 1984 against then current Beer Taxes which the Department is allowing or has allowed pursuant to the settlement of litigation including those referred to in Interrogatory No. 11 above listing the name of the taxpayer and the amounts of the credits allowed.
The requests for production objected to by the Secretary pursuant to La.R.S. 47:1508 are as follows:
REQUEST FOR PRODUCTION NO. 6:
Please produce all documents related to the exemption granted to Dixie Brewing Company or Dixie Brewing Company, Inc. (collectively, "Dixie Brewing Company") referred to in paragraphs 10 through 13, inclusive, of the Petition. Specifically, with respect to the contract with the Board of Commerce and Industry, please produce all documents related to the application, consideration, approval, granting of contract, the contract itself, and the termination and revocation of the contract, including all minutes of any meetings in which the same was discussed.
REQUEST FOR PRODUCTION NO. 7:
Please produce all documents related to any exemptions, other than those granted to Dixie Brewing Company, granted to other taxpayers with respect to the Beer Taxes, including without limitation, with respect to any contracts granted by the Board of Commerce and Industry, the application, consideration, approval, granting of contract, the contract itself, and any termination or revocation of the contract, including all minutes to meeting [sic] in which the same was discussed for the time period of 1974 through today.
REQUEST FOR PRODUCTION NO. 8:
Please produce all documents evidencing any exemptions granted pursuant to La.R.S. 26:342.
REQUEST FOR PRODUCTION NO. 9:
Please produce all document [sic] evidencing or relating to any credits being allowed certain beer distributors pursuant to the settlement of litigation between the Department and these beer distributors, including, but not limited to, the litigation referred to in Interrogatory No. 22 filed herein.[8]
The issue of whether the Secretary's objection pursuant to La.R.S. 47:1508 is valid under the facts of this case is a question of statutory interpretation. The following rules found in Bunch v. Town of St. Francisville, 446 So.2d 1357, 1360 (La.App. 1st Cir.1984) are applicable:

When a law or ordinance is clear and free from all ambiguity, it must be given effect as written....
When interpreting a law (ordinance), the court should give it the meaning the lawmaker intended. It is presumed that every word, sentence or provision in the law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. Conversely, it will not be presumed that the lawmaker inserted idle, meaningless or superfluous language in the law or that it intended for any part or provision of the law to be meaningless, redundant or useless. The lawmaker is presumed to have enacted each law with deliberation and with full knowledge of all existing *312 laws on the same subject. The meaning and intent of a law is to be determined by a consideration of the law in its entirety and all other laws on the same subject matter, and a construction should be placed on the provision in question which is consistent with the express terms of the law and with the obvious intent of the lawmaker in enacting it. Where it is possible to do so, it is the duty of the courts in the interpretation of laws to adopt a construction of the provision in question which harmonizes and reconciles it with other provisions. A construction of a law which creates an inconsistency should be avoided when a reasonable interpretation can be adopted which will not do violence to the plain words of the law and will carry out the intention of the law maker....
When the expressions of a law are "dubious", the most effectual way of discovering the true meaning of the law is to consider the reason and spirit of it, or the cause which induced the lawmaker to enact it.... When a law is susceptible to two or more interpretations, that which affords a reasonable and practical effect to the entire act is to be preferred over one which renders part thereof ridiculous or nugatory.... If there is an irreconcilable conflict between the provisions of a law, only one provision can prevail. (Emphasis added; citations omitted)
See also Achee v. Louisiana State Employees' Retirement Board, 527 So.2d 1116,1118-1119 (La.App. 1st Cir.1988); Notoriano v. Anthony, 527 So.2d 1120, 1121-1122 (La.App. 1st Cir.1988).
La.R.S. 47:1508 is clear and unambiguous. See Buras v. State, 496 So.2d 517 (La.App. 1st Cir.1986). See also In the Matter of State Financial Service, Inc. 432 F.Supp. 129 (M.D.La.), aff'd, 565 F.2d 161 (5th Cir.1977). It states that the records and files of the Secretary are confidential and privileged, and that no person shall disclose any information obtained from such records or files. It also states that the Secretary shall not be required to produce any record or file for inspection or use in any proceedings. The only exception to the mandatory prohibitions is disclosure or production in "an action ... in the administration or enforcement of the tax laws of this state ..." The discovery sought by the taxpayers falls within the prohibitions of La.R.S. 47:1508. Thus, this information is not discoverable unless the exception to the general rule is applicable.[9]
The meaning of "in the administration and enforcement of the tax laws of this state" is clear and unambiguous when the terms are given their usual significance and the phrase is considered in pari materia with other laws in this area. La.R.S. 1:3; La.C.C. arts. 11 and 13. Administration is defined as the act of managing or supervising the execution, use, or conduct of. Webster's Ninth New Collegiate Dictionary 57 (1984). Enforcement is defined as the act of putting something such as a law into effect; the carrying out of a mandate or command. Black's Law Dictionary 474 (5th ed. 1979). La.R.S. 47:1502 states that the Secretary shall collect and enforce the collection of all taxes, penalties, interest and other charges that may be due under the provisions of Sub-title II of this title and administer the legislative mandates therein contained. Thus, the Secretary is empowered by law with the enforcement and administration of the tax laws of this state; an individual taxpayer is not. It follows that "proceedings in the administration and enforcement of the tax laws of the state" are those which are brought by the Secretary; an individual taxpayer does not bring an action to administer and/or enforce the tax laws. Thus, if the Secretary is required to go to court to administer or enforce the tax laws, he can use the records of his office to do so. If a taxpayer files a suit, he can use his own records in it because they are not confidential like those of the Secretary. The problem in this case is that the taxpayers herein *313 want to obtain the records of other taxpayers in the custody of the Secretary. The taxpayers herein have not attempted to obtain or discover these records directly from the other taxpayers or other sources.
In this case, the taxpayers petitioned for declaratory relief and refund of taxes and interest paid under protest. This is not a suit in the administration or enforcement of the tax laws of this state within the purview of La.R.S. 47:1501 et seq. Thus, the exception to the mandatory prohibitions of La.R.S. 47:1508 is inapplicable, and the information sought by the taxpayers is not discoverable. See Buras v. State, 496 So.2d at 519. See also In the Matter of State Financial Services, Inc., 432 F.Supp. at 132-133. On the showing made, we are not willing to say that the taxpayers herein can have access to other taxpayers' records in the custody of the Secretary. The trial court erred in holding that the answers to certain specified interrogatories and certain requests for production of documents were not confidential and in granting the motion to compel. We reserve the authority to review this holding if the taxpayers can demonstrate an inability to obtain essential evidence directly from the other taxpayers.
This assignment of error has merit.

DECREE
For the foregoing reasons, the writ issued herein is made peremptory, the judgment of the trial court granting the motion to compel the specified interrogatories and requests for production of documents which were objected to under La.R.S. 47:1508 is reversed, and the motion to compel answers to interrogatories and request for production of documents objected to under La.R.S. 47:1508 is denied. This action is remanded to the trial court for further proceedings in accordance with law. The costs of this writ shall be assessed in a final judgment on the merits in the trial court.
REVERSED, RENDERED AND REMANDED.

 EXHIBIT A
 Taxpayer Amount Paid Under Protest
Testa Distributing Company, Inc. $ 57,231.85
G & G Distributing Corporation $100,019.85
Natchitoches Beverage Inc. $ 12,245.86
Coors of Northeast Louisiana, Inc. $ 16,645.76
Beverage Sales, Inc. $ 53,798.38
Venture Marketing Corporation $ 29,024.42
 EXHIBIT B
 Testa Distributing Company, Inc.
 Year Amount of Taxes Paid
 1974 $ 184,173.22
 1975 $ 414,784.57
 1976 $ 557,304.22
 1977 $ 783,237.26

*314
 1978 $ 920,982.53
 1979 $ 1,035,455.60
 1980 $ 1,138,569.20
 1981 $ 1,046,400.00
 1982 $ 924,100.00
 1983 $ 798,613.61
 1984 $ 901,322.78
 1985 $ 931,354.07
 1986 $ 942,763.43
 1987 $ 913,595.92
 1988 $ 842,369.05
 January-March, 1989 $ 175,487.59
 ______________
 TOTAL $12,510,513.05
 ==============
 G & G Distributing Corporation
 Year Amount of Taxes Paid
 1976 $ 744,507.43
 1977 $ 1,104,009.11
 1978 $ 1,361,596.14
 1979 $ 1,570,292.15
 1980 $ 1,708,486.90
 1981 $ 1,654,512.55
 1982 $ 1,464,112.64
 1983 $ 1,267,366.25
 1984 $ 1,279,239.79
 1985 $ 1,468,990.81
 1986 $ 1,395,387.58
 1987 $ 1,264,763.00
 1988 $ 1,136,209.02
 January-March, 1989 $ 232,637.64
 ______________
 TOTAL $17,652,111.01
 ==============
 Natchitoches Beverage Inc.
 Year Amount of Taxes Paid
 1974 $ 79,772.31
 1975 $ 96,387.64
 1976 $ 101,805.83
 1977 $ 114,347.00
 1978 $ 116,136.00
 1979 $ 127,106.00
 1980 $ 186,849.60
 1981 $ 217,100.20
 1982 $ 180,178.99
 1983 $ 173,819.23
 1984 $ 161,850.78
 1985 $ 176,681.57
 1986 $ 177,387.63

*315
 1987 $ 168,188.73
 1988 $ 165,700.16
 January-March, 1989 $ 35,487.20
 _____________
 TOTAL $2,278,798.87
 =============
 Coors of Northeast Louisiana, Inc.
 Year Amount of Taxes Paid
 1981 $ 246,714.54
 1982 $ 211,400.73
 1983 $ 181,359.31
 1984 $ 111,061.61
 1985 $ 149,732.97
 1986 $ 192,914.46
 1987 $ 193,974.41
 1988 $ 176,785.15
 January-March, 1989 $ 33,733.27
 _____________
 TOTAL $1,497,676.45
 =============
 Beverage Sales, Inc.
 Year Amount of Taxes Paid
 1974 $ 330,924.74
 1975 $ 462,728.18
 1976 $ 507,118.62
 1977 $ 527,324.77
 1978 $ 579,203.65
 1979 $ 713,999.81
 1980 $ 819,489.36
 1981 $ 875,358.23
 1982 $ 794,694.48
 1983 $ 701,310.66
 1984 $ 724,674.63
 1985 $ 732,712.50
 1986 $ 755,036.54
 1987 $ 711,624.65
 1988 $ 673,743.71
 January-March, 1989 $ 142,532.56
 ______________
 TOTAL $10,052,477.09
 ==============
 re Marketing Corporation
 Year Amount of Taxes Paid
 1974 $ 174,995.63
 1975 $ 321,684.13

*316
 1976 $ 371,535.66
 1977 $ 481,767.10
 1978 $ 547,528.38
 1979 $ 622,698.69
 1980 $ 741,961.79
 1981 $ 660,900.00
 1982 $ 479,836.05
 1983 $ 434,668.95
 1984 $ 453,840.53
 1985 $ 452,672.58
 1986 $ 470,342.74
 1987 $ 441,920.52
 1988 $ 396,428.15
 January-March, 1989 $ 81,055.61
 _____________
 TOTAL $7,133,836.51
 =============
 EXHIBIT C
 Taxpayer Amount of Credit
Schilling Distributing Company, Inc. $762,493.81
Quality Brands, Inc. 659,488.02
Quality Brands, Inc. (as successor to
 Quality Beverage, Inc.) 13,171.89
R.D. Sales and Service, Inc. 2,391.67
Franklin Cigar & Tobacco Co., Inc. 84,736.56
Prize Beer, Inc. 70,770.03
Premium Brands, Inc. 122,907.39
Cenla Beverage Co., Inc. 79,234.60
Streva Distributing Co., Inc. 98,775.68
Streva Distributing Co. of New Iberia,
 Inc. 231,573.93
Southwest Beverage Co., Inc. 817,640.27
Wm. H. Carter (successor to Southern
 Beverage, Inc.) 763,949.37
Champagne Beverage, Inc. 461,097.50
B. Olinde & Sons Co., Inc. 644,455.77
Barney Carey Co., Inc. 157,532.56

*317
Jim Carey Distributing Co., Inc. 288,755.67
Magnolia Liquor of Lafayette, Inc. 20,150.61
Crown Beverage Co., Inc. 522,158.08
Lafayette Distributors, Inc. 305,799.37
Buquet Distributing Co. 258,777.64
Louisiana Beer Co., Inc. 114,924.97
Delta Distributing Company 108,003.66
Anheuser Busch, Inc. 1,674,595.51

NOTES
[1] Leon R. Tarver, II, in his capsacity as Secretary of the Department of Revenue and Taxation, was substituted as a party defendant for Arnold A. Broussard by order dated October 11, 1989. The caption of this suit was changed pursuant to the Ocotober 11, 1989 order to reflect this substitution.
[2] Dennis Stine, Commissioner of the Division of Administration, was dismissed from this action by order dated September 29, 1989.
[3] The motion to compel does not make reference to the request for admission of facts. A copy of the request for admission of facts was not attached to the motion to compel as an exhibit.
[4] The minute entries for September 28, 1990, and October 16, 1990, state that the trial court granted the motion to compel answers to interrogatories. They are silent as to any ruling on the motion to compel the request for production of documents. Since a judgment granting a motion to compel discovery is interlocutory and does not have to be in writing, the record does not contain a written judgment on the taxpayers' motion to compel which may clarify this omission. La.C.C.P. arts. 1841, 1911 and 1914; In the Matter of Hornsby and Landry, 532 So.2d 559 (La.App. 3rd Cir.1988); Winslow v. Goodyear Tire and Rubber Co., 359 So.2d 699 (La. App. 1st Cir.1978). Generally, when a trial court's judgment is silent with respect to a party's claim, it is presumed that the trial court denied the relief sought. R.A.K. v. Board of Trustees of State Employees Group Benefits Program, 558 So.2d 633 (La.App. 1st Cir.1990), n. 1; Johnston v. Johnston, 408 So.2d 459 (La.App. 1st Cir.1981); Hoover v. Beatty, 323 So.2d 490 (La. App. 1st Cir.1975). However, in this writ, the parties treat the motion to compel the request for production of documents as having been granted, so we will likewise do so.
[5] In brief, the taxpayers also contend the Secretary by failing to timely object to their request for admissions is deemed to have admitted these requests. See La.C.C.P. art. 1467; Davis v. Westinghouse Electric Corporation, 526 So.2d 337 (La.App. 4th Cir.1988); Larkin v. First of Georgia Underwriters, 466 So.2d 655 (La.App. 5th Cir.1985); Hoskins v. Caplis, 431 So.2d 846 (La. App. 2d Cir.1983). The taxpayers' request for admissions were not made part of their motion to compel and, therefore, were not considered by the trial court. This court will only review issues which were submitted to the trial court; therefore, we decline to address this argument. See Rule 1.3 of the Uniform Rules of Louisiana Courts of Appeal; State v. Johnson, 553 So.2d 865 (La.App. 1st Cir.1989), writ denied, 558 So.2d 600 (La.1990); Robichaux v. Robichaux, 525 So.2d 321 (La.App. 1st Cir.1988).
[6] The taxpayers contend that since Rules 33 and 34 of the Federal rules of Civil Procedure contain language similar to that in La.C.C.P. arts. 1458 and 1462(B), we should follow the federal jurisprudence interpreting Rules 33 and 34 which holds that a party waives his right to object to interrogatories or requests for production of documents once the time deadline has expired. Although decisions of federal courts interpreting similar federal rules may be persuasive, they are not necessarily controlling. Cousins v. State Farm Mutual Automobile Insurance Company, 258 So.2d 629 (La.App. 1st Cir. 1972). We decline to follow the federal jurisprudence.
[7] The Secretary does not contend that the discovery sought is irrelevant. See La.C.C.P. art. 1422.
[8] We recognize that other beer distributors may have an interest in this suit because it is their tax records which are at issue; however, these distributors are not indispensable parties. They may have a right to intervene and obtain a protective order. See In Re Protest of Dow Chemical Company, 458 So.2d 955 (La.App. 1st Cir.1984).
[9] The party who contends he comes within an exception to a general rule established by a statute, must prove it. Cambridge Corner Corporation v. Menard, 525 So.2d 527 (La.1988); Hortman-Salmen Co. v. White, 168 La. 1049, 123 So. 709 (1929).