**NOT DESIGNATED FOR PUBLICATION**

**STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT**

**CA 11-820**

**MAGGIE SEPULVADO MANSHACK**

**VERSUS**

**MARY GARCIA KERSHAW**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 60465
HONORABLE STEPHEN BRUCE BEASLEY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JIMMIE C. PETERS
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, and Jimmie C. Peters and Billy Howard Ezell, Judges.

**AFFIRMED.**

**Joey W. Hendrix
Attorney at Law
617 Market Street
Shreveport, LA 71101
(318) 222-0070
COUNSEL FOR DEFENDANT/APPELLANT:
    Mary Garcia Kershaw**

**Michael P. Cash
Gardere, Wynne, Sewell, L.L.P.
1000 Louisiana, Suite 3400
Houston, TX 77002-5011
(713) 276-5500
COUNSEL FOR PLAINTIFF/APPELLEE:
    Maggie Sepulvado Manshack**

PETERS, J.

The plaintiff, Maggie Sepulvado Manshack, brought this action against her niece, Mary Garcia Kershaw, to annul a donation inter vivos in which Ms. Manshack transferred to Ms. Kershaw 5.078 acres of land, subject to a lifetime usufruct in her favor. Ms. Kershaw appeals the trial court's judgment annulling the donation. For the following reasons, we affirm the trial court judgment.

## FACTS AND PROCEDURAL HISTORY

Most of the testimony presented at the trial of this matter can best be described as inconsistent. However, there are some facts that are not in dispute. These include the fact that Ms. Manshack acquired the 5.078 Sabine Parish acres at issue in this litigation on December 9, 1986. She lives alone in the home located on the land, and at the time this litigation arose, she was eighty-seven years old. Ms. Kershaw is Ms. Manshack's niece and resides in Caddo Parish, Louisiana, a significant distance from the Sabine Parish property.

On October 17, 2003, Ms. Kershaw and her father, James Garcia, traveled from Caddo Parish to Sabine Parish, picked up Ms. Manshack and her sister-in-law, Ms. Artie May Sepulvado,[1] at her home, and transported them to a pawn shop in Many, Louisiana, the parish seat of Sabine Parish. There they met with Barbara Lopez, an employee of the pawn shop who is also a notary public. Ms. Lopez prepared an instrument titled "DONATION INTER VIVOS," which was signed by Ms. Manshack as donor, Ms. Kershaw as donee, and Mr. Garcia and Ms. Sepulvado as witnesses. Ms. Lopez notarized the instrument.

The instrument purported to transfer Ms. Manshack's 5.078 acres to Ms. Kershaw "in consideration of the natural love and affection which [Ms. Manshack]

---

[1]Ms. Sepulvado's deceased husband was Ms. Manshack's brother. Ms. Sepulvado was eighty-three years old in 2003 and lived next to Ms. Manshack.

bears for niece, Mary Kershaw." The instrument was recorded in the records of the Sabine Parish Clerk of Court immediately after its execution.

On December 19, 2007, Ms. Manshack filed a petition naming Ms. Kershaw as a defendant and seeking to have the donation annulled. In her petition, Ms. Manshack asserted that she never intended to donate the property and that the donation was obtained "by fraud and ill practices."

The matter went to trial on February 28, 2011, and immediately upon completion of the evidence, the trial court rendered oral reasons for entering judgment in Ms. Manshack's favor. Specifically, the trial court stated:

> In the Court's opinion, this donation was not executed in proper form. It's in the Court's opinion, Ms. Artie Mae Sepulvado did not witness Ms. Manshack's signature as she was signing. In addition, based on the evidence of testimony, the Court does not believe Ms. Manshack had the requisite intent regarding this donation.

The trial court executed a judgment conforming to its reasons for judgment on April 5, 2011, and thereafter Ms. Kershaw perfected this appeal. In her appeal, Ms. Kershaw asserts three assignments of error:

> 1] The trial court erred in allowing parole evidence to be admitted into evidence in order to determine the parties['] intent and the validity of the donation.
>
> 2] The trial court erred in finding that the donation was not executed in proper form.
>
> 3] The trial court erred in finding that Maggie Sepulvado Manshack lacked the donative intent at the time of the donation.

**OPINION**

A donation inter vivos is "a contract by which a person, called the donor, gratuitously divests himself, at present and irrevocably, of the thing given in favor of another, called the donee, who accepts it." La.Civ.Code art. 1468. Such a donation must be made by authentic act "unless otherwise expressly permitted by law." La.Civ.Code. art. 1541. A donation inter vivos is irrevocable except for the

2

four causes set out in La.Civ.Code art. 1556, none of which are applicable here.[2] However, Ms. Manshack does not seek to have the donation revoked. Instead, she seeks to have it declared an absolute nullity because it was obtained by fraud and ill practices in violation of La.Civ.Code art. 1478.[3] Louisiana Civil Code Article 1483 provides, in pertinent part that "[a] person who challenges a donation because of fraud, duress, or undue influence, must prove it by clear and convincing evidence."

## *Parole Evidence*

In her first assignment of error, Mrs. Kershaw argues that the trial court erred in admitting parole evidence to determine the validity of the donation and Mrs. Manshack's intent. Louisiana Civil Code Article 1835 states that "[a]n authentic act constitutes full proof of the agreement it contains, as against the parties, their heirs, and successors by universal or particular title." Thus, the general rule is that parole evidence is not admissible to contradict or destroy an authentic act. *Succession of Robinson*, 94-2229 (La. 5/22/95), 654 So.2d 682. However, evidence may be admitted to prove a vice of consent, a simulation, that the written act was modified by a subsequent valid oral agreement, or the unlawfulness of the cause. La.Civ.Code art. 1848; 5 Saúl Litvinoff, Louisiana Civil Law Treatise, The Law of Obligations, 12.90 (2d ed. 2001). Further, parole evidence is admissible when fraud is alleged as a ground to invalidate an authentic act. 5 Louisiana Civil Law Treatise 12.96 (2d ed. 2001). Finally, parole evidence is admissible to prove that an instrument that purports to be an authentic act was

---

[2]Louisiana Civil Code Article 1556 provides that "[a] donation inter vivos may be revoked because of ingratitude of the donee or dissolved for the nonfulfillment of a suspensive condition or the occurrence of a resolutory condition. A donation may also be dissolved for the nonperformance of other conditions or charges."

[3]Ms. Manshack also asserts that the donation violates La.Civ.Code art. 1498, which provides that a donation inter vivos that divests a donor of his or her entire patrimony, leaving the donor without enough for his subsistence, is absolutely null. The trial court did not address Mrs. Manshack's claim that the donation violated La.Civ.Code art. 1498; therefore, we presume that he rejected that claim. *Testa Distributing Co. v. Tarver*, 584 So.2d 300 (La.App. 1 Cir. 1991).

not executed in compliance with the codal requirements. *American Bank & Trust Co. in Monroe v. Carson Homes, Inc.*, 316 So.2d 732 (La.1975). We find no merit in this assignment of error.

### *Donative Intent*

Because the trial court's determination that Ms. Manshack lacked donative intent when she exercised the October 17, 2003 instrument is dispositive of this case, we will consider it first. In doing so, we note that the events surrounding the execution of the act of donation on October 17, 2003, are in extreme conflict.

Ms. Manshack testified that she did not invite Ms. Kershaw and her father to her home on that day and that at no time did she suggest that she wished to convey her property to Ms. Kershaw. According to Ms. Manshack, the purpose of the trip to Many was to deliver a document to the local funeral home and not to effect a transfer of property at the pawn shop. She testified that as Ms. Kershaw and Ms. Lopez conducted business with one another, she looked around the pawn shop at the merchandise. She acknowledged that she signed a paper at the pawn shop, but asserted that Ms. Kershaw covered everything except the signature line as she executed the document. According to Ms. Manshack, she thought she was executing a document to assist Ms. Kershew in some personal matter.

Ms. Manshack testified that she was not even aware that she had signed her land away until years later, when she attempted to apply to the Sabine Parish Police Jury for a grant available to low-income individuals for home repairs. At that time, she was told she was not eligible for the grant because the home was titled in Ms. Kershaw's name. Ms. Manshack testified that on numerous occasions thereafter she asked her niece to transfer the property back to her, but was always met with some excuse from Ms. Kershaw. In summary, Ms. Manshack suggested that "I did not give [Ms. Kershaw] nothing. She's dreamed that," and that she [Ms.

4

Manshack] "wouldn't never given[sic] away [her] home, you know. She just fooled me in signing that paper. That's what she done."

On the other hand, Ms. Kershaw testified that when Ms. Manshack summoned her to Sabine Parish on October 17, 2003, she had no idea of her aunt's wishes. According to Ms. Kershaw, Ms. Manshack was the one who brought up the donation issue in a discussion at her home that morning. While her testimony was extremely contradictory in many respects, Ms. Kershaw was steadfast in asserting that the transfer was Ms. Manshack's idea. According to Ms. Kershaw, Ms. Manshack was worried that the government would take her property if she entered a nursing home, and she wanted Ms. Kershaw to take over her personal affairs. However, the evidence establishes that Ms. Kershaw did little or nothing for her aunt either before or after the donation instrument was executed. When asked why she would not acquiesce in her aunt's request to have her property transferred back, she asserted that she refused to do so because she was attempting to protect her aunt from other influences.

Ms. Kershaw could not recall who provided Ms. Lopez with the proper property description, but Ms. Lopez testified that it was Ms. Manshack, not Ms. Kershaw, who provided the information she needed to prepare the act of donation.[4] According to Ms. Lopez, Ms. Manshack informed her that she wanted to donate the property to Ms. Kershaw in order to prevent the government from acquiring it if she were required to enter a nursing home, but that otherwise she wanted to remain in her home during her lifetime. With these thoughts in mind, Ms. Lopez prepared an act of donation with a clause providing for a lifetime usufruct. Ms. Lopez testified that before the act was executed, she explained to Ms. Manshack the ramifications of the instrument, including specifically that she was divesting

---

[4] Ms. Kershaw presented somewhat confusing testimony concerning whether she brought the needed documentation from Caddo Parrish, whether Ms. Manshack provided it, or whether they acquired it from the Sabine Parish Clerk of Court's office on the day the act of donation was executed.

5

herself of ownership of the land. According to Ms. Lopez, Ms. Manshack responded that she understood the explanation and wished to proceed with the transaction.

Although Mr. Garcia testified that Ms. Manshack was a willing participant in the execution of the act of donation, his testimony conflicted with his daughter's in critical areas. According to Mr. Garcia, the donation issue had obviously been discussed between his daughter and Ms. Manshack before he and his daughter left Shreveport on October 17, 2003, because his daughter informed him before they left Caddo Parish that they were to pick up Ms. Manshack and take her to Many. However, his testimony did support Ms. Lopez's assertion that she explained the consequences of executing the document and Ms. Manshack responded that she understood what was explained to her.

It is obvious from its reasons for judgment that the trial court accepted Ms. Manshack's factual version of the events surrounding the execution of the October 17, 2003 act of donation. It is well settled that a trial court's findings of fact will not be set aside absent a finding that they are manifestly erroneous or clearly wrong, and where there is conflict in the testimony inferences of fact should not be disturbed upon review even though the reviewing court may feel its own evaluations and inferences are reasonable. *Rossell v. ESCO*, 549 So.2d 840 (La.1989); *Stobart v. Dept. though DOTD*, 617 So.2d 880 (La.1993). Where different, yet permissible, views of the evidence exist, the factfinder's choice from among the different permissible views cannot be manifestly erroneous or clearly wrong. *Stobart*, 617 So.2d 880. That is to say, the credibility determinations of the trial court are subject to the strictest deference, and the manifest error/clearly wrong standard demands great deference for those findings. *Theriot v. Lasseigne*, 93-2661 (La. 7/5/94), 640 So.2d 1305.

6

While the trial court must make credibility determinations based on the strength of the evidence and not the number of witnesses testifying to a particular factual scenario, Ms. Manshack's statement of the October 17, 2003 events standing alone – especially considering the testimony of the notary public – might not be sufficient to satisfy the clear and convincing evidence standard of La.Civ.Code art. 1483. However, the trial court's credibility determinations are supported by other aspects of the evidentiary record.

Of particular significance is the fact that the October 17, 2003 act of donation was not the only action Ms. Kershaw took to gain control of Ms. Manshack's property. On October 1, 2003, Ms. Lopez notarized a general power of attorney, purportedly executed by Ms. Manshack, naming Ms. Kershaw as her attorney-in-fact. This document also appears to be witnessed by Mr. Garcia and Ms. Sepulvado,[5] and states that it was executed to allow Ms. Kershaw "[t]o handle all [Ms. Manshack's] personal and business affairs." Although she testified that its purpose was to assist Ms. Manshack with her bills, personal affairs, and affairs related to her burial, the first thing Ms. Kershaw did with the power of attorney was to change the beneficiary on Ms. Manshack's life insurance policies and have herself named as beneficiary. Both Ms. Manshack and Ms. Sepulvado[6] denied signing the power of attorney and both denied having ever been in the pawn shop before October 17, 2003.

Additionally, other evidence questions the credibility of Ms. Lopez's testimony. Ms. Lopez testified that as she explained the consequences associated with the execution of the act of donation to Ms. Manshack, Ms. Kershaw and both of the witnesses were close at hand, listening to the discussion. This assertion was

_____

[5]The witness signature appearing on the power of attorney is that of "Artie Ebarb" which is Ms. Sepulvado's maiden name.

[6]Because Ms. Artie Sepulvado had died before trial on the merits, the trial court accepted into evidence her testimony in a previous criminal proceeding which involved the same issues before the trial court.

7

challenged by Ms. Manshack and Ms. Sepulvado, who both asserted that they, together with Mr. Garcia, were wandering around the pawn shop during the preparation of the document. Additionally, Ms. Manshack denied any discussion with Ms. Lopez concerning the content of the document. Also, at one point in her testimony, Ms. Lopez testified that she never notarized a document without seeing the parties sign it in her presence. However, Anisa Annette Sepulvado testified that in 2009 she signed her mother's name to an exchange deed notarized by Ms. Lopez. She asserted that the deed was delivered to her home by a relative and that she signed it at the instructions of her mother who was in Alabama at the time. According to Anisa Sepulvado, Ms. Lopez was not present when she signed the document, and Ms. Lopez notarized the instrument at a later time.

In its very brief oral reasons for judgment, the trial court simply stated that Ms. Manshack lacked the "requisite intent' required to effect a valid execution of the act of donation. We interpret that statement to mean that the trial court found that Ms. Manshack established by clear and convincing evidence that her signature was obtained by the fraud and ill practices of Ms. Kershaw and/or Ms. Lopez. Assuming, as we have previously stated, the trial court accepted all of Ms. Manshack's testimony and all of the remaining testimony favorable to her, and rejected the testimony of Ms. Kershaw, Ms. Lopez, and Mr. Garcia that was not favorable to her, the record supports this conclusion. That being the case, we find no merit in this assignment of error.

***The Form of the Donation***

In this assignment of error, Mrs. Kershaw asserts that the trial court erred in finding that the donation was not executed with all the necessary formalities. A donation inter vivos must be made by authentic act. La.Civ.Code. art. 1541.

> An authentic act is a writing executed before a notary public or other officer authorized to perform that function, *in the presence of two witnesses*, and signed by each party who executed it, by each

8

witness, and by each notary public before whom it was executed. The typed or hand-printed name of each person shall be placed in a legible form immediately beneath the signature of each person signing the act.

La.Civ.Code art. 1833(A) (emphasis added).

In this case, the trial court found that the act of donation was invalid because Ms. Sepulvado did not *witness* Ms. Manshack sign the instrument within the meaning of La.Civ.Code art. 1833(A). The trial court obviously based this conclusion on the testimony of Ms. Manshack and Ms. Sepulvado.

Because we found no error in the trial court's determination that the act of donation was null and void because of the lack of donative intent, we need not address whether a witness who is in the immediate vicinity of a transaction but who does not observe the act of a party signing is sufficient to meet the "in the presence of" requirement of La.Civ.Code art. 1833(A).

### *Mrs. Manshack's Motion to Strike Portions of Mrs. Kershaw's Brief*

Ms. Manshack filed a motion to strike those portions of Mrs. Kershaw's brief that referenced or relied on testimony from a separate criminal trial which involved the same parties and the same basic issues now before this court. She raises this issue because, although the trial court ruled the entire criminal record inadmissible except for Ms. Sepulvado's testimony, Ms. Kershaw used other portions of the criminal record in her brief to this court. We grant Ms. Manshack's motion and strike all references to the criminal trial other than that of the testimony of Ms. Sepulvado.

### DISPOSITION

For the foregoing reasons, we affirm the trial court's judgment in favor of Maggie Sepulvado Manshack and against Mary Garcia Kershaw. We assess all costs of these proceedings to Mary Garcia Kershaw.

**AFFIRMED.**

9

**This opinion is NOT DESIGNATED FOR PUBLICATION.**
**Rules 2-16.2 and 2-16.3, Uniform Rules—Courts of Appeal.**